## THE STATE *v.* TRUEBLOOD ET AL.

[No. 3,178. Filed June 20, 1900. Rehearing denied Nov. 1, 1900.]

CRIMINAL LAW.—*Illegal Allowance by County Commissioners. — Indictment.*—Under §7853 Burns 1894, making it a public offense for the board of county commissioners, except in case of indispensable public necessity, to make any allowance to certain named county officers, an indictment for the payment of money to the county auditor for extra work as clerk of the board on account of gravel roads is held to be insufficient.

From the Lawrence Circuit Court. *Affirmed.*

*W. L. Taylor,* Attorney-General, *Merrill Moores, C. C. Hadley, J. A. Zaring, McHenry Owen* and *S. B. Lowe,* for State.

*J. C. Lawler* and *M. B. Hottel,* for appellees.

COMSTOCK, J.—The indictment in this cause is in two counts. We are informed by counsel for the State that the first count is based upon §7853 Burns 1894, §5766 Horner 1897. The second count is based upon §2105 Burns 1894, §2018 Horner 1897. From the action of the trial court in quashing the indictment, the State appeals.

For convenience, we set out, omitting the formal parts, the first count: "On the 27th day of November, 1897, at the county of Lawrence and State of Indiana, Henry C. Trueblood, Matthew Robertson, and John W. Cosner then and there constituted and were members of the board of county commissioners of said county of Lawrence, in the State of Indiana, duly elected, qualified, and acting, and as such did then and there each unlawfully and wrongfully favor, vote for, and urge, procure, and induce each other to vote for and favor a certain allowance unto John B. Malott, who was then and there the duly elected, qualified, and acting auditor of said Lawrence county, there being then and there no indispensable public necessity for such allowance and no such necessity being found and entered of record by said board of county commissioners as part of its orders in making its orders in making such allowance, and there being no necessity whatever for such allowance, and said allowance not being specifically or otherwise required by law, but being illegal and wholly unwarranted by law, which said allowance was then and there unlawfully made by said board of commissioners in the sum of $500 for certain pretended services, which services the said John B. Malott then and there claimed to have rendered to the said county of Lawrence in the performance of certain duties, that is to say, extra work on account of gravel roads as clerk of board for thirty-two months at $25 per month, $800, which said claim was then and there by said board of county commissioners reduced to the sum of $500, which said sum of $500 was then and there by said board of com-

missioners, each member thereof as aforesaid unlawfully favoring the same, unlawfully and wrongfully allowed on said claim to said John B. Malott, who was then and there auditor of Lawrence county. ·That the duties performed by said Malott for which said claim was filed, pretended, and allowed were and are duties which said auditor was and is legally required to perform as a part of the duties of said office without extra pay, and said allowance was wholly unnecessary and unlawful. Contrary," etc.

The second count charges the same facts, as to the filing and allowance of the same claim, and charges the failure to perform a certain duty in the manner and within the time prescribed by law, as provided by section 2105, *supra*.

This court, in the recent case of *State* v. *Trueblood*, 23 Ind. App. 31, in which the same question presented by the second count of the indictment before us was involved, held that the acts charged did not constitute any offense under the section named. To that decision we still adhere.

It only remains, therefore, to consider the sufficiency of the first count. Section 7853, *supra*, reads as follows: "The board of county commissioners shall, unless in cases of indispensable public necessity, to be found and entered of record as part of its orders, make no allowance not specifically required by law to any county auditor, clerk, sheriff, assessor or treasurer, either directly or indirectly, or to any clerk, deputy, bailiff or any employe of such officer; nor shall they, except in cases above provided, employ any person to perform any duty required by law of any officer, or for any duty to be paid by commission or percentage. For a violation of these provisions, each member of such board favoring the same shall be guilty of a misdemeanor, and, on conviction, shall be fined in any sum not less than double nor more than five times the amount of such allowance, to which may be added imprisonment in the county jail for any period not more than sixty days, and the office of such commissioner shall be declared forfeited. If it be found neces-

sary, and so entered of record, to employ any person to render any service as contemplated in this section, as a public necessity, the contract for such employment shall be spread of record in said court; and, for such services rendered, the claimant shall file his account in said court ten days before the beginning of the term, and any taxpayer shall have the right to contest the claim." This section of the statute makes it a public offense for the board of county commissioners, acting as such board, unless in a case of indispensable public necessity, which fact is to be found and entered of record as part of its orders, to make any allowance not specifically required by law to either of certain officers named therein.

The general rule is recognized that material matters in either civil or criminal pleadings must be directly alleged, and not stated by way of recital. *Jackson School Tp.* v. *Farlow,* 75 Ind. 118; *Shafer* v. *Bear, etc., Co.,* 4 Cal. 294; *Hall* v. *Williams,* 13 Minn. 260; *Lake Shore, etc., R. Co.* v. *Cincinnati, etc., R. Co.,* 116 Ind. 578.

It will be observed from the reading of the indictment that the allegation as to the necessity for the allowance and as to its specific requirements by law are by recital, and not direct averment. The words "illegal" and "unwarranted" are conclusions of law, and do not describe the offense attempted to be charged. This count does not charge that the allowance was made out of the moneys of the county of Lawrence. The date at which the services were claimed to have been rendered is not stated. Its averments are not sufficient to bar another prosecution for the same offense. It does not appear, except by inference, that the party named as auditor, at the time the claim was filed and allowed, was auditor at the time the services were rendered, for which compensation was claimed. This date is material, for under the law in force until March 11, 1895, the board of county commissioners were authorized to employ and pay a clerk to record the proceedings of the board in a book provided for

such purpose. §7831 Burns 1894, §5746 Horner 1897. It is a principle of criminal pleading that an indictment upon a statute must state the facts which constitute the definition of the offense in the act so as to bring the defendant within it. The indictment before us may be true and the defendant not guilty of the offense described in the statute.

The court did not err in sustaining the motion to quash. Judgment affirmed. Wiley, J., dissents.

### DISSENTING OPINION.

WILEY, J.—I concur with my associates in holding that the second count of the indictment is bad, but am not in accord either with the reasoning or the conclusion reached in the prevailing opinion holding that the court correctly sustained the motion to quash as to the first count.

In determining the sufficiency of the first count there are two sections of the statute which may properly be considered, viz., §§7853, 6548 Burns 1894. The former section is quoted in the prevailing opinion, and need not here be repeated. The latter section is as follows: "It shall be unlawful for any board of commissioners to allow any county, township or other public officer, any sum of money out of a county treasury, except when the statutes confer the clear and unequivocal authority to do so." Section 7853, supra, prohibits the board of commissioners from making any allowance to any county auditor, etc., which such allowance is not specifically required by law, unless in case of indispensable public necessity to be found and entered of record as a part of its order. This section also provides a penalty for the violation of its provisions. Section 6548, supra, makes it unlawful for a board of commissioners to allow any county, township, or other public officer any sum of money out of the county treasury except when the statutes confer the "clear and unequivocal authority to do so." This section makes such allowance of money unlawful, but does not prescribe a penalty.

The first question to be determined is, was the claim of the county auditor, which was filed by him and allowed by the board, and which is described in the first count of the indictment, an unlawful or unwarranted claim? If the auditor was not entitled to the compensation specified in the claim filed, and as allowed, then it was an illegal claim against the county; there was no liability on the part of the county, and its allowance by the board was unlawful, within the meaning of the statute. I am informed by the indictment that the basis of the claim of the auditor was for extra services claimed to have been rendered by him on account of gravel roads, as clerk of the board for thirty-two months, at $25 per month. By the act of 1891, the compensation of county officers in this State was graded and fixed. It is plain that it was the intention of the legislature by said act to regulate, adjust, and fix such compensation, to the end that constructive fees should neither be charged nor paid. The law, as then passed, became a public necessity to correct well known abuses that had grown up under our former laws, and that the public might be protected against unjust and unwarranted claims of public officers. By the act of 1891, the salary of the auditor of Lawrence county was fixed at $2,400. Acts 1891, p. 433. By the amended act of 1895, the salary of the auditor of said county was fixed at $2,300 per annum. §7403 Horner 1897. §7356 Horner 1897, being a part of the amended fee and salary law of 1895, provides that "The county officers named herein shall be entitled to receive for their services the compensation specified in this act * * * * subject to the conditions herein prescribed, *and they shall receive no other compensation whatever."* The italicization is my own. The act of 1891, *supra,* contained the same provision. Acts 1891, pp. 427, 428. Section 7450 Horner 1897, provides for the taxing of certain fees by county auditors in behalf of their respective counties, the fees and amounts to be designated "Auditor's costs," but it is fur-

ther provided that such fees so taxed "shall in no sense belong to or be the property of the auditor, but shall belong to and be the property of the county." Among the many duties of a county auditor prescribed by the legislature is that "by virtue of his office he shall be clerk of the board of county commissioners of his county, and shall keep an accurate record of all the corporate proceedings of such board." §5895 Horner 1897. By §5740 Horner 1897, it is made the duty of the auditor to attend the meetings of the board of commissioners and to keep a record of their proceedings. ' If the legislature has provided any extra or additional compensation for a county auditor for performing the duty prescribed in the section of the statuate just cited, I am unable to find it, and counsel have not pointed it out in their brief. I have thus referred to all the statutes that have any bearing upon the question now under consideration, and it seems manifest that in none of them is any provision made authorizing the payment, by a board of commissioners, of a claim against a county of the character of that described in the indictment; while on the contrary there appears to have been a studied effort on the part of the legislature in these several enactments to guard against such claims and the payment thereof. While it is unnecessary to refer by sections to the law, it is sufficient to say that the legislature has clothed the several boards of commissioners in this State with power and jurisdiction, under certain conditions and within fixed limitations, to have constructed under their orders free gravel roads. This authority is conferred upon them in the same manner as their authority to grant liquor licenses, to order, on petition, the construction of public ditches, to lay out, vacate, and change public highways, to build court-houses, etc., is conferred. The board of county commissioners is a statutory body, and all its powers, its authority and its jurisdiction are conferred upon it by the legislature, whose creature it ·is. When a board of county commissioners is exercising its

jurisdiction and powers relating to the construction, etc., of gravel roads, as delegated to it by the legislature, it is simply acting as a board of county commissioners, and in no other capacity. When the respective commissioners are sitting as a board, transacting the public business entrusted to them, it is made the duty of the county auditor, as I have shown, to attend their sessions and to keep a record of their proceedings. This duty is enjoined upon him by statute, and in assuming his official position he engages to perform that duty. It is as much his duty to attend the sessions of the board when it is engaged in hearing and determining matters pertaining to the construction, repair, etc., of gravel roads, and to keep a record of such proceedings, as it is his duty to attend the sessions of the board when it is engaged in the examination and allowance of claims against the county, in passing upon applications for liquor licenses, in acting upon petitions for the location or vacation of highways, or any other business connected with such board, and to keep a record of such proceedings. If a county auditor is entitled to extra compensation for acting as clerk of the board of commissioners while such board is engaged in the discharge of the duties pertaining to the construction of gravel roads, by the same course of reasoning we must reach the conclusion that he would be entitled to extra compensation for attending the meetings of the board and keeping a record of its proceedings when engaged in the dispatch of its business pertaining to any of its enumerated duties. To put such a construction upon the law would create such an endless chain system of extra compensation to public officers as would put to blush the most greedy official, and destroy the commendable work of the legislature, which for years has been to erect a barrier, by its wise and just laws, against just such attacks as this upon the public treasury. I am convinced, from an examination and consideration of all the laws regulating the fees and salaries of county officers, that the claim of the auditor of Lawrence county, as described

in the indictment, was unauthorized by any law now upon the statute books, and was, therefore, an illegal and unlawful claim, and should not have been allowed.

The next inquiry naturally and logically leads me to the consideration of the question, was the allowance of such claim by the appellees, acting as a board of county commissioners, an unlawful act, within the meaning of the statute, upon which the indictment rests? Appellees were bound to know that the claim of the auditor, upon which they were called upon to act, was an illegal claim, and hence not binding upon the county; for they are presumed to know the law, and as I have shown there is no warrant in the statute in justification or support of the claim. There is but one theory upon which appellees can be relieved from criminal liability under the charges in the indictment, and that is that, in the allowance of the claim, they acted in a judicial capacity, and for a judicial action, although, in contravention of a criminal statute, a prosecution will not lie. Indeed, I am told by counsel in their brief, that it was upon this theory alone that the trial court sustained the motion to quash. I can not believe that this theory can be successfully maintained. In the first place, if it can, the statute, §7853 Burns 1894, is nugatory, inoperative, and ineffectual. When a claim is filed in the auditor's office against the county (and the law requires all such claims to be so filed) it can only be disposed of in two ways; (1) by the voluntary withdrawal of it by the claimant, or (2) by an action of the board either in allowing or disallowing it.

Statutes are not passed for idle or meaningless purposes, and when the legislature declared, as it did in the section just referred to, and §6548 Burns 1894, that it should be unlawful for any board of county commissioners to make any allowance to any county, etc., officer, "not specifically required by law," "unless in cases of indispensable public necessity," etc, and "except when the statutes confer the clear and unequivocal authority to do so," it meant to define

a crime against the public, and to provide a punishment adequate to the crime. If members of a board of county commissioners can shield themselves from an act declared by the legislature to be a crime, by claiming that they acted in a judicial capacity, then all restrictions as to their powers in the allowance of claims might as well be removed. As I have seen, a board of commissioners is a creature of statute. This being true, it has no authority beyond that expressly given by statute. It necessarily follows that when a claim is presented to it for allowance, and there is no statute which gives it validity, there exists no authority or power to allow it. There being no such authority, it can not assume or usurp judicial functions to sanction the individual acts of its members, or to protect them from criminal liability.

In *Waymire* v. *Powell,* 105 Ind. 328, the court, by Mitchell, J., said: "The compensation of officers is, as a rule, prescribed by law, and it has often been declared by this court, that before any public officer may demand or receive compensation out of the public treasury for services performed by him, it is required that he show: 1. That a specific compensation is allowed by law for the services for which remuneration is claimed. 2. That express authority exists for making payment out of the public funds." Citing *Noble* v. *Board, etc.,* 101 Ind. 127; *Board, etc.,* v. *Gresham,* 101 Ind. 53; *Board, etc.,* v. *Harman,* 101 Ind. 551; *Bynum* v. *Board, etc.,* 100 Ind. 90; *Wright* v. *Board, etc.,* 98 Ind. 88. "In the case of *Board* v. *Gresham, supra,* this court said, in reference to the rule above stated: 'It is of the highest concern to the public that this should be so; otherwise it would be within the power of one body of county officials to compensate the other county officers out of the public treasury, as a matter of grace and favor, without limit or restraint.'" In the case from which I have just quoted, it was held that county commissioners can not compensate other county officers for official services without express authority of law.

State *v.* Trueblood.

This court, in *Board, etc.,* v. *Nichols,* 12 Ind. App. 315, had under consideration the question as to what capacity a board of commissioners acted, in considering and allowing a claim against the county, and it was there said: "The board in hearing such claim, acts merely in the capacity of an auditing committee. Its action is ministerial and not judicial. Any order made by it in allowing or refusing to allow the claim does not rise to the dignity of a judicial determination or judgment." The case of *Board, etc.,* v. *Heaston,* 144 Ind. 583, is instructive upon this point. In that case, Jordan, J., said: "We have seen that     *    *    * the board is the agency of the county for the transaction of its business. A portion of this business is the auditing and allowing of 'legal claims.' We are of the opinion, and are constrained to hold, that when the board examined into and allowed the claims presented to them by appellee, it stood in the eye of the law as the representative of its county, and thereby acted in its administrative capacity, and not in the character of a court; that while its order so made might be termed *quasi-judicial,* yet it did not attain to the rank of a judicial determination or judgment so as to bring it under the protection of the rule *res judicata.* The fact that the statute pertaining to the auditing of claims, grants an appeal to the circuit court at the option of the claimant, lends no force to the contention that the board acts as a court in allowing the same." In other states, the same rule obtains, and it is held that the allowance of a claim by the board is not *res judicata. Commissioners, etc.,* v. *Keller,* 6 Kan. 510; *Board, etc.,* v. *Catlett,* 86 Va. 158; *Abernathy* v. *Phifer,* 84 N. C. 711.

In *Myers* v. *Gibson,* 152 Ind. 500, while the question was not directly presented, yet in the decision the doctrine announced in the cases above cited was discussed and approved. In that case, in addition to referring to and approving the rule that in the allowance of a claim a county board acts in its executive and administrative and not in its judicial ca-

pacity, Monk, C. J., said: "It is settled law that a board of commissioners in this State has no powers, except such as are expressly given by statute, and such as are necessary to the exercise of the powers expressly given; and the powers so given are limited and must be exercised in the manner provided by statute." Citing, *Myers* v. *Gibson,* 147 Ind. 452; *Board, etc.,* v. *Pollard,* 17 Ind. App. 470.

In *Board, etc.,* v. *Buchanan,* 21 Ind. App. 178, the rule that a board of county commissioners, in allowing a claim against the county, acts in an administrative and not a judicial capacity was recognized by holding that the allowance by the board of illegal fees to a county clerk was no defense in an action by the county to recover such fees. In that case, Robinson, J., said: "The fact that the claim for the fees in question was filed before the board of county commissioners and was allowed and paid accordingly, constitutes no defense to this action. The Supreme Court has held that the board of commissioners can not bind the county by allowing an unlawful claim, and that the payment of such a claim in defiance of a statute, is not a payment by the county within the rule that a payment under mistake of law can not be recovered." Citing *Board, etc.,* v. *Heaston,* 144 Ind. 583. These authorities negative the theory that the appellees acted in a judicial capacity.

The two sections of the statute we have under consideration, §§7853, 6548, Burns, 1894, relate to the same subject-matter and should be construed together. They differ only in verbiage, and that in the former a penalty is prescribed, while in the latter the penalty is omitted. The former is more elastic, in that in cases of indispensable public necessity, to be found and entered of record, the board may be authorized to make allowances which are not specifically provided for by law. In the former, also, the respective officers are named to which allowances are prohibited which are "not specifically prescribed by law", while in the latter the prohibition goes to "any county, township or

other public officer", as to the allowance of a claim, "except when the statutes confer the clear and unequivocal authority to do so." By both of the sections, the act of making unauthorized or unwarranted allowances is made unlawful. Construing these two sections of the statute together, I have no trouble in applying the facts charged in the first count of the indictment to them in reaching the conclusion that such facts constitute a crime within their meaning sufficient to put appellees upon trial. I have considered these two sections of the statute in conjunction, for the reason that jointly they fully and forcibly express the legislative intention to make the act complained of a crime, and while a penalty is only prescribed by section 7853, *supra,* it is now the settled law in this State, that where a statute makes an act unlawful, but fails to provide a penalty, we may look to another statute for the penalty, if such there be. See *State* v. *Buskirk,* 20 Ind. App. 496.

The law in force until March 11, 1895, allowed county commissioners to employ and pay a clerk, whose duty it was, under the statute, to record all proceedings of the board when acting in the capacity of gravel road directors, in a book provided for that purpose. §6868 Burns 1894. This law, however, was repealed by the act approved March 11, 1895. Acts 1895, p. 362. After the passage of the act of 1895, the board of county commissioners had no authority to employ a clerk. The charge in this case, however, is not in the employment of a clerk in violation of the statute, but in making an allowance to a county auditor for extra services—for services which he was bound to perform by virtue of his office—and in the absence of an indispensable public necessity found by the board to exist and entered upon its order-book. The question has been put at rest in this State, that a board of county commissioners can not make such an allowance to a county auditor in the absence of such finding.

In *Nowles* v. *Board, etc.,* 86 Ind. 179, the Supreme Court

said: "In addition to this the 39th section provides, that 'The board of county commissioners shall, unless in cases of indispensable public necessity, to be found and entered of record as part of their orders, make no allowance not specifically required by law to any county auditor', and makes a violation of this provision a misdemeanor. These services were not found to be, nor were they in fact, such services as are contemplated by the above section, and as their payment is not specifically required it follows that the payment is prohibited, and that no recovery can be had for them. These services must be deemed a part of the services for which the salary is allowed, and that sum must compensate the appellant."

In *Wright* v. *Board, etc.,* 98 Ind. 88, appellant, as auditor, filed a claim against the county for services rendered in the establishment of a free gravel road. In passing upon the validity of the claim, the court said: "Where a fixed salary is provided by law, and fees for services are specifically designated, the officer can rightfully claim no other compensation. Unless a statute expressly, or by fair implication, makes provision for compensation, a claim can not be enforced by legal process against the county except where there is a contract stipulating for the services, and the contract is itself within the authority of the county commissioners." See, also, *Wright* v. *Board, etc.,* 98 Ind. 108; *Stropes* v. *Board, etc.,* 84 Ind. 560.

In the case of *Board, etc.,* v. *Barnes,* 123 Ind. 403, the board of commissioners declared that "an indispensable public necessity exists during the construction of free gravel roads in Tippecanoe county, whereby the auditor is compelled to perform a large amount of extra labor, for which no compensation is allowed by law." In view of this extra labor, an indispensable public necessity was declared for extra compensation to the auditor. Notwithstanding this declaration, the Supreme Court held that the auditor could not recover, and in so holding, said: "A board of county

commissioners can not add to its power nor give effect to an unauthorized act by any declaration of its own.  It can not make a question of power one of expediency by any assertion or recital.  Cobwebs of that sort will be swept away by the courts, and the action of the tribunal so thoroughly examined and explored as to enable the courts to determine the true character of the act or transaction.  What can not be accomplished directly can not be accomplished by indirection.  Declarations will not be permitted to conceal or cover the proceedings, for the courts will strip off covers and ascertain the real nature of the transaction.  We do not, therefore, attach any importance to the recitals in the orders before us, but, putting them aside, we look only to the real act performed by the board.  We have no difficulty in ascertaining the real character of the act in this instance, for the purpose sought to be accomplished is transparent.  No one can doubt that the purpose of the board of commissioners was to add to the fees of the county auditor.  The question, therefore, is, has a board of commissioners power to add to the fees of the auditor of the county?  We know that comprehensive powers are conferred upon county commissioners; we know, too, that they are, in a sense, the county.  But, after all, the county is no more than a public corporation, created by statute and deriving its powers from the legislature.  If a county is not given power to fix the fees of public officers by statute, it can possess no such power.  It adds nothing, therefore, to the strength of the appellee's position to affirm that the board of commissioners is the county.  But it is not strictly true that the board is the county.  It can by no possibility be true that the board is the county, for, in a just sense, the inhabitants of the organized locality constitute the county.  In strict accuracy the commissioners are public officers representing the county, with powers and duties defined and prescribed by statute.  The money which they control is the money of the county, the debts which they incur are the debts of the county, and

the authority they exercise is such as resides in them as the officers and representatives of the county. But the source of their power is the statute, and the standard by which it is to be measured is that supplied by the legislative enactments. It is true, as we have suggested, that the grant of a principal power carries by implication such subsidiary powers as are necessary to effectuate the principal power, but the authority to fix the fees of a county officer is not a subsidiary power, nor can it be, since the regulation of the fees and salaries of elective officers is a matter of principal importance in every instance. Our own cases declare that a public officer is not entitled to any other compensation than that fixed by the legislature itself, or by some officer or body to whom authority to fix the compensation has been delegated."

In *Lee* v. *Board, etc.,* 124 Ind. 214, a like question was presented, and in deciding it the court said: "The practical question in this, and all other cases of this class, is, was the work for which the public officer asks compensation out of the public treasury, such as is embraced in the general duties of his office, and for which the law provides compensation? If it was, manifestly the commissioners had no power to add to the compensation prescribed by the statute; if it was not, then it is pertinent to inquire whether the county commissioners have power to supplement the provisions made by the legislature, by adding new duties to a public office, and fixing compensation for the added duties by contract with the officer. Until it can be shown that county boards are invested with power to supply what may be regarded as defects or deficiencies in the law, by enlarging the duties of county officers, and providing compensation for what may be deemed to be extraordinary services, claims of the character of that in question can receive no countenance from the courts. In view of the uniform decisions of this court, from its earliest organization until now, and of the prohibitory legislation concerning allowances, which looks in the

face of county boards at every turn, it is a matter of surprise that it should be supposed that an inferior tribunal, possessed of limited jurisdiction, such as is committed to boards of commissioners, was the repository of such general and extraordinary power." See, also, *Board, etc., v. Johnson,* 127 Ind. 238; *Waymire v. Powell,* 105 Ind. 328.

In the case of *Board, etc., v. Buchanan,* 21 Ind. App. 178, this court held that a public officer takes and holds his office for the compensation stipulated by statute, whether the duties of the office be increased or diminished. In the same case it was held that an illegal claim for fees allowed to the clerk of the circuit court by the board of commissioners would not constitute a defense to an action by the county to recover back such fees. Under the statute and the authorities, the claim described in the indictment, and which was allowed by the appellees, acting as a board of commissioners, was an illegal, unfounded, and unwarranted claim. It can not be upheld upon any hypothesis. It is charged that appellees unlawfully and wrongfully allowed this claim, and that the duties performed by the auditor, upon which the claim was founded and allowed, were and are duties which he was and is legally required to perform as a part of the duties of his office without extra compensation. The appellees urge that the first count of the indictment does not charge that the allowance made to the auditor was not made as a part of his salary. This was not necessary. It does charge that the claim presented was for extra services performed pertaining to free gravel roads, and that such claim was illegal and wholly unwarranted. This shows that the claim was for extra work, and it necessarily follows that it was no part of the auditor's salary, which is fixed by law, and the commissioners do not have to allow it.

It is further urged that the indictment is not good because it does not charge fraud or corruption. I can not believe that such omission makes the indictment bad. It charges a specific violation of a statutory crime in the substantial lan-

guage of the statute. It charges that the appellees wrongfully and unlawfully made an allowance to a public officer, the county auditor, without first performing mandatory steps required by law, and which the law says shall be punished criminally. The public money may be given away without either fraud or corruption, and yet be a violation of the law, and for such violation a prosecution will lie. It has many times been held that an indictment which substantially follows the language of the statute in defining a crime, etc., is sufficient. Of the many authorities so holding, I cite the following: *Stewart* v. *State,* 111 Ind. 554; *Benham* v. *State,* 116 Ind. 112; *Graeter* v. *State,* 105 Ind. 271; *State* v. *Miller,* 98 Ind. 70; Gillett on Crim. Law, §132a.

It may be suggested that the indictment is not sufficient in substance and form, for the reason that it does not appear that the services of the auditor, for which he was allowed, were not rendered in some other capacity than that of auditor, for which he was entitled to compensation. The indictment does charge that the services for which he was allowed were the services which were required of him to be performed as such auditor. This can not be a conclusion of law, but a statement of a substantive fact. The duties of a county auditor are prescribed by law, and one of those duties is to act as clerk of the board and to keep its record. The only service he could perform for the county in such capacity was to act as clerk for the board and keep a record of its proceedings while it was engaged, as such board, in the transacting of its business pertaining to gravel roads. If the appellees were acting in the capacity of a board of county commissioners, which the indictment avers they were, and if the services for which the auditor charged were for services performed in his capacity of clerk of such board, which the indictment says he was, then it precludes the idea that either the board or the auditor was acting in any other capacity. It follows as a necessity that the appellees were

not acting as a board of gravel road directors, and that the services for which the auditor was allowed were not performed by him as clerk of the board of gravel road directors. The statute, §6868 Burns 1894, prior to its amendment in 1895, made the board of county commissioners *ex officio* a board of gravel road directors, but it did not make the auditor *ex officio* clerk of such board. It authorized the board of gravel road directors to appoint a superintendent and a clerk. They were required to keep a record of their proceedings in a book provided for that purpose by the county commissioners, and it was the duty of the clerk appointed by them to keep such record, and for his services he was to receive not to exceed $1.50 per day for the time actually employed by him. There was no requirement of the statute that the board of gravel road directors should employ the auditor as clerk, and there is no presumption that they did in this instance, for they were authorized to employ any "suitable person." The act constituting the board of commissioners a board of gravel road directors went into effect March 24, 1879. See Acts 1879, p. 226, §6868 Burns 1894. In 1895, §6868, *supra,* was amended, and all that part relating to the employment of some "suitable person" to act as clerk, and defining his duties, was eliminated. Acts 1895, p. 362. So as the law now is, and has been since March, 1895, the board of gravel road directors have no authority to employ a clerk. It might be suggested that the services for which appellees, acting as a board of county commissioners, allowed the auditor, might have been for services rendered by him as clerk of the board of gravel road directors, under an appointment, and before the law was amended in 1895, and that the indictment should have negatived such facts. It indeed would be a stretch of the imagination and a forced construction that would lead to such conclusion. When the indictment avers that the services for which the auditor charged and was allowed were services which he was required to perform by virtue of his

office as auditor, and when we remember that the auditor's salary is fixed by law, and that the statute specifically provides that he "shall receive no other compensation whatever," it would be absurd to hold that because the indictment did not negative these facts it should be held as not charging a crime.

Another rule of construction in criminal law is that no greater certainty is required in criminal than in civil proceedings. *McCool* v. *State,* 23 Ind. 127. Certainty to a common intent is all that is required in criminal pleadings, and an indictment need not be more certain than a civil pleading. *Lay* v. *State,* 12 Ind. App. 362; *State* v. *Sarlls,* 135 Ind. 195.

Reverting again to the question of pleading an exception or negativing a state of facts to which the indictment does not apply, it seems that the rule is firmly established that it is unnecessary to plead such exception or negative, except where there is an exception in the statute defining the offense, then the indictment must negative the exception. The law in relation to pleading exceptions in criminal pleading is that if the exception is contained in a subsequent clause or statute, it is a matter of defense, and need not be negatived in the indictment. This rule applies even where the exception is created by a proviso in the statute.

In *Russell* v. *State,* 50 Ind. 174, it was said: "The law in relation to exceptions in a statute is, that if the exception be contained in a subsequent clause or statute, it is a matter of defense and need not be negatived in the indictment." In referring to that case and quoting the language above used, the Supreme Court, in *State* v. *Maddox,* 74 Ind. 105, said: "This, we understand, is the settled rule of law on the subject now under consideration." Citing Archibald's Crim. Pr. & Pl. (8th ed.) p. 361. The case of *Hewitt* v. *State,* 121 Ind. 245, was a prosecution for killing a dog. The statute, §2852 Burns 1894, makes it a misdemeanor to mischievously kill a dog that has been listed for taxation. This

section of the statute contains a proviso to the effect that it does not apply if the dog, when killed, was engaged in committing damages to the property of any person other than its owner, or if it is known to be a dog that will kill sheep, etc. It was urged that the indictment was not good, and one of the objections to it was that the exception contained in the proviso was not negatived. In deciding the point, Mitchell, C. J., said: "It will be seen that the exception is in a substantive clause embraced in a proviso, and not in the clause of the statute which declares and defines the offense. ·The indictment is good, therefore, within the established rule that 'Where an offense is created by statute, and an exception is made, either by another statute or by another substantive clause of the same statute, it is not necessary for the prosecutor, either in the indictment or by evidence, to show that the defendant does not come within the exception; but it is for the defendant to prove the affirmative and which he may do under the plea of not guilty.' " To the same effect is the case of *Mergentheim* v. *State,* 107 Ind. 567. But in the case before us there is no proviso in the statute, or in any other statute, creating an exception. The offense of which appellees are charged is plainly defined by the statute, and the language used in defining the offense is plain, clear, and unequivocal. There is no hidden meaning in it. The statute simply says that it shall be unlawful for the board of commissioners to do a certain thing, and the indictment charges that they did the very thing which the statute has defined as an offense, and the charge is in the substantial language of the statute. I do not conceive it to be a duty of the court to search other statutes to see if there is not some remote or contingent provision therein contained whereby it might appear that the county auditor had performed some extra or other service not specifically enjoined upon him by virtue of his office, and in some other capacity, for which the commissioners might be authorized to make him an allowance out of the public treasury. If such a contingency

exists, then it could be pleaded as a defense, but it never has been held, either in criminal or in civil proceedings, that the complaining party must not only state the facts upon which he rests his case, but must also state the facts upon which his adversary may rest his defense. Under the rule, which is unvarying, in this State, and adhered to by all the text-writers, the indictment did not have to aver any facts tending to show that the appellees might make a successful defense upon the provisions of some other statute.

It follows from this that it was not necessary to charge in the indictment facts showing that the services performed by the auditor were not other services not required to be performed by him. If such a condition existed, appellees might base a defense upon it, but in my judgment the indictment did not have to show such condition. Having expressed my views upon the general principles involved and the law as generally applied to the facts charged, I will now briefly review the prevailing opinion, and attempt to show why, in my judgment, my associates have reached a wrong conclusion. The prevailing opinion rests upon four propositions: (1) That the material matters alleged in the indictment are not directly alleged, but stated by way of recital; (2) that it does not appear, except by inference, that the party named as auditor was such auditor at the time the services were rendered; (3) that the averments are not sufficient to bar another prosecution for the same offense; (4) that the indictment does not state the facts which constitute the definition of the offense in the statute so as to bring the defendants within it.

The rule is correctly stated in the prevailing opinion, that material matters in criminal pleadings must be directly alleged and not stated by way of recital; but the rule here is, in my judgment, misapplied. The opinion says that the allegations as to the necessity for the allowance and as to its specific requirements by law are by recital and not by direct averment, because the words "illegal" and "unwarranted"

are conclusions of law, and do not describe the offense attempted to be charged. Section 7883 Burns 1894, forbids the allowance of any claim by the board of commissioners to a county auditor and other officers named, not specifically required by law, except in cases of indispensable public necessity, which indispensable public necessity shall first be found and entered of record. Section 6548 Burns 1894, declares that it shall be unlawful for such board to allow any county or other public officer any sum of money out of a county treasury except when the statute confers the clear and unequivocal authority to do so. Now the first count of the indictment charges that the appellees were members of the board, and that while acting as such, unlawfully and wrongfully allowed a specific claim to a county auditor; that there was no indispensable public necessity for such allowance; that no such necessity was found and entered of record; that such allowance was not specifically required by law; that such allowance was unlawfully made for certain pretended services in the performance of certain duties, to wit, extra work on account of gravel roads as clerk of board, etc. The violation of any criminal statute is an unlawful act, for it is in defiance of law. The indictment says the act charged was unlawful and wrongful. The words "illegal" and "unwarranted" used in the indictment do not, in my judgment, add to or take from it. If an act is unlawful, it is both "illegal" and "unwarranted," and it seems plain to me that this is the sense in which they are used in the indictment. In an indictment for assault and battery, it is sufficient to charge the act as being done unlawfully. There is just as good reason for saying that that would be stating a conclusion and not a material fact, as to say here that the facts before us state a mere conclusion. To my mind, every essential and material fact constituting the offense as designated by the statutes is specifically and clearly stated in the indictment. (2) It is urged in the prevailing opinion that it does not appear from the indict-

ment that the party named was the county auditor at the time the services were rendered. Concede, for the argument, that there is no direct averment that he was such auditor, yet every reasonable inference shows that he was. Malott is referred to, named, and described as the "duly elected, qualified and acting auditor." The pretended services for which he was allowed was for "extra work on account of gravel roads as clerk of board for thirty-two months," etc. I have shown in the former part of this opinion that a county auditor is *ex officio* clerk of the board of commissioners. I have also shown that until the act of 1895, the board of commissioners, while sitting as a board of gravel road directors, were authorized to employ a clerk to keep the record, and to pay such clerk a fixed *per diem.* He was not to be paid so much per month, but so much per day for every day actually so employed. Now the indictment charges that the allowance was made to him for pretended services as clerk of the board, and not as clerk of the gravel road directors. If the claim had been for services as clerk of the gravel road directors, it would have been for a fixed number of days at a fixed *per diem* as designated by statute. The only way a county auditor can act as clerk of a board of county commissioners is to act by virtue of his office, and this duty is enjoined upon him by statute, and the statute, as I have shown, fixes his salary and specifically says that he shall receive "no other compensation whatever." It seems to me, therefore, that no reasonable construction can be placed upon the language used which would lead to any other conclusion than that it definitely and clearly shows that Malott was auditor at the time the services were rendered for which he was allowed. I can not believe that courts should resort to fine technicalities and hair-splitting distinctions to shield public officers who have betrayed the trust confided to them, when in plain violation of a law enacted out of public necessity they have unlawfully and wrongfully plundered the public treasury, as was plainly

done in this case, as shown by the indictment. It seems to me a mere subterfuge to say that the indictment does not show that the allowance was made out of the moneys of the county, as is said in the prevailing opinion, and for this reason, it is bad. Courts take judicial knowledge of the laws of the State, and are bound to know that a board of county commissioners can not make an allowance except out of the moneys of the county they represent. It is provided by statute that "neither presumptions of law nor matters of which judicial notice is taken need be stated in an indictment." §1739 Horner 1897. This was also the rule at common law. A board of commissioners is, in a large sense, the fiscal agent of the county. In financial matters they do not have jurisdiction over any funds except the county's, and hence, in making an allowance, it is not necessary to enter as a part of the order that it is to be paid out of the county treasury, for it follows as a matter both of law and fact. In §7853 Burns 1894, the legislature did not see any necessity for expressing in the statute that the county commissioners should not make any allowance, etc., to be paid out of the moneys of the county. The legislature knew, as courts must know, that that is the only way such allowances could be paid, and it was useless so to express it in the law. The board could not have made an effective order to pay the allowance out of any money over which they had no control, and as the only funds at their disposal were the county funds, it follows as a logical and legal conclusion that the allowance was to be so paid, and hence the averments are amply sufficient in this respect. (3) That the averments are not sufficient to bar another prosecution for the same offense. I am unable to see any merit in this contention. Succinctly stated, the indictment shows the following material facts: That appellees were members of the board of county commissioners; that Malott was auditor of the county; that on November 27, 1897, appellees, while sitting and acting as such board, unlawfully voted for and

allowed said Malott as such auditor the sum of $500 for
extra work, etc., as clerk of the board, etc. ; that there was no
indispensable public necessity for such allowance; that no
such indispensable public necessity had been found and en-
tered of record; that such allowance was not specifically or
otherwise required by law; that said claim was for pre-
tended services rendered, etc., and that the duties performed
by said Malott for which said claim was filed, pretended,
and allowed, were and are duties which he was legally re-
quired to perform as a part of the duties of his said office,
without extra pay, etc. The facts thus stated are all plain
and distinct. They definitely designate the date of the al-
lowance and all the acts constituting the offense. The facts
are in perfect harmony with the statute. The offense is de-
fined in almost the exact language of the statute, and the
acts constituting the offense are clearly stated. All that is
required in a criminal charge is that it should be prepared
with that degree of certainty that the court and jury may
know what they are to try, and to acquit the defendant of
or punish him for; that the defendant may know what he is
to answer to, and that the record may show, as far as may
be, for what he has once been put in jeopardy. *Whitney* v.
*State,* 10 Ind. 404; *McLaughlin* v. *State,* 45 Ind. 338; Gil-
lett on Crim. Law (2nd ed.) 125. The law does not re-
quire that minute facts be stated so as to save the defendant
the necessity of introducing parol evidence to show the iden-
tity of the offense charged on a plea of former jeopardy.
*State* v. *Malone,* 8 Ind. App. 8.

To my mind the indictment is sufficient under the general
provisions of §1755 Horner 1897. It is there declared
that the indictment will be sufficient if it can be understood
therefrom (1) that it was found by the grand jury; (2) that
the defendant is named; (3) that an offense was committed
within the jurisdiction of the court, or is triable therein;
(4) that the offense charged is clearly set forth in plain
and concise language; (5) that the offense is charged with

such a degree of certainty that the court may pronounce judgment upon conviction. It seems to me that all these requirements are embodied in the indictment in this case. §1756 Horner 1897, after enumerating certain defects for which an indictment shall not be quashed, provides in subdivision ten that it shall not be quashed "for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." I am utterly unable to see how the substantial rights of the defendants (appellees) could be prejudiced in a trial under the indictment upon the facts, on the merits of the case, and for the reasons given and the authorities cited, I am led to the conclusion that the averments of the indictment are sufficient to bar another prosecution for the same offense. (4) As to the fourth reason urged against the sufficiency of the indictment in the prevailing opinion, what I have said as to the facts stated in defining the offense is applicable, and I will not notice it further.

The whole question here resolves itself to this proposition: The salary of the auditor was fixed by law; he was not entitled to any extra fees or other compensation; the appellees, acting as a board of commissioners, unlawfully allowed him $500 out of the public treasury, and thus increased his salary to that extent in plain violation of the statute. The indictment, it seems to me, shows these facts with sufficient certainty, and the motion to quash should have been overruled.