## EDER ET AL. v. KREITER ET AL.

[No. 5,938.   Filed November 20, 1907.]

1. ACTIONS.—*Counties.—Debts Due to.—Taxpayers.—Demand.— Boards of Commissioners.—Equity.*—The board of commissioners is the primary body to institute actions for the recovery of money due to the county, but in case such board refuses to sue, upon proper demand, taxpayers may institute a suit therefor, making such board a defendant. p. 545.

2. PLEADING.—*Complaint.—Parties.—Boards of Commissioners.— Designation of.*—A complaint alleging that certain individuals constitute the board of commissioners of a certain county and that "as such board" they refused, upon demand made, to bring an action to recover money due to the county, sufficiently shows that such board is a party to the suit. p. 545.

3. COUNTIES.—*Money due to.—Collection.—Boards of Commissioners.—Taxpayers.*—Section 7848c Burns 1901, Acts 1897, p. 187, §6, providing that any taxpayer may sue for the recovery of money unlawfully allowed by the board of commissioners, sixty days after making demand upon the board for the collection thereof, does not deprive taxpayers from suing in equity for the recovery of such sums, demand being first made upon the board and such board refusing to proceed. p. 547.

4. BOARDS OF COMMISSIONERS.—*Payments.—Powers.*—The powers of the boards of commissioners are purely statutory, and their unlawful payments are not payments by the counties which they represent. p. 547.

5. FEES AND SALARIES.—*Payment.—Clerks of Circuit Courts.*— Under §6532 Burns 1901, providing that clerks of the circuit courts shall receive the salary provided by law, provided they collect sufficient fees to pay same, a clerk who paid in $300, not actually collected, was not injured, unless the fees paid in together with such sum of $300 exceeded his stipulated salary. p. 549.

6. ACTION.—*Statutory Cause.—Clerks.—Fees and Salaries.—Mistake.*—A clerk of the circuit court, claiming that he paid to the county a sum of money through inadvertence, mistake or other

cause, in order to recover same, must show that such payment was made under circumstances making it unjust for the county to withhold same. p. 550.

7. FEES AND SALARIES.—*Property of.*—*Clerks.*—The fee of one dollar charged, by the clerk of the circuit court, under §6519 Burns 1901, Acts 1895, p. 319, §114, for the issuance of naturalization papers, was the property of the county, and in no sense belonged to such clerk. p. 550.

8. TRIAL.—*Special Findings.*—*Boards of Commissioners.*—*Demands Upon.*—A special finding showing that taxpayers requested the board of commissioners to institute an action for the recovery of money illegally paid out and that the members of such board while in session orally refused to take any action thereon, but failed to make any record entry thereof, sufficiently shows a demand and refusal. p. 550.

9. BOARDS OF COMMISSIONERS.—*Proceedings.*—*Record.*—*Judicial.*—*Administrative.*—*Evidence.*—Judicial actions of boards of commissioners must be shown by their records, but administrative actions may be shown by parol. p. 551.

From Porter Circuit Court; *William Johnston,* Special Judge.

Suit ·by Frederick Kreiter and others, against George M. Eder and another. From a judgment for plaintiffs, defendants appeal. *Affirmed.*

*Crumpacker & Daly,* for appellants.

*Milo M. Bruce, Otto J. Bruce* and *J. H. Conroy,* for appellees.

MYERS, J.—Appellees, taxpayers of Lake county, brought this·suit for and on behalf of the county against appellants to recover $300, money alleged to belong to the county and received by appellant George M. Eder, and by him converted to his own use. A complaint in two paragraphs answered by a general denial formed the issues, which were submitted to the court for trial, resulting in a judgment for $300 against Eder in favor of Lake county. Each paragraph of the complaint was tested by a demurrer, which was overruled. A demurrer was sustained to Eder's second and separate paragraph of answer, averring that the cause of action set up in the complaint did not accrue within sixty days prior to the

commencement of the action.   The venue was changed to the
Porter Circuit Court, where the trial was had, and special
findings made and conclusions of law stated thereon.

Errors assigned and argued relate to the action of the
court in overruling Eder's demurrer to each paragraph of
the complaint, in sustaining appellee's demurrer to Eder's
second paragraph of answer, and in stating its conclusions
of law.   Both paragraphs of the complaint are challenged
on the ground that neither directly averred (1) that the
board of commissioners was a party to the action; (2) that
the parties constituting the board were such at the time the
action was begun; (3) that the parties upon whom the de-
mand was made by appellee to bring suit constituted the
board of commissioners at that time.

It is clear that neither paragraph was carefully drawn,
but the question is, does each paragraph, when separately
considered, state facts sufficient to withstand a demurrer
for want of facts?   This controversy grew out of the allow-
ance   and   payment   out   of   the   county   funds   of   a
claim filed by Eder against the county on August 20, 1903,
showing that on December 5, 1896, and for five years con-
tinuously theretofore, he was the clerk of said county, and
as such officer, during the months of October and November,
1896, did, at the special instance and request of divers per-
sons, namely, the chairman of the republican central com-
mittee and its officers, naturalize 300 foreigners without cost
or expense to such applicants, but at a cost and expense to
said committee and its officers, who agreed to pay the same,
and from whom he expected compensation therefor; that on
December 5, 1896, in making out his quarterly report to the
commissioners of said county, he paid to the county out of
his own private funds the sum of $300, the same being the
expense for naturalizing said foreigners, and for which he
expected to be reimbursed by said parties agreeing to pay the
same; that he has not been paid said sum; that said parties
never intended to pay the same; that at the time of filing

the claim there was in the clerk's fund $1,100, out of which said sum was asked to be paid.

This was a suit in equity, and the board of county commissioners was a necessary party in order that the rights of the county might be determined and the relief granted awarded to it as a party to the record. 3 Pomeroy, Eq. Jurisp. (3d ed.), §1095. The board of commissioners is "a body corporate and politic" (§7820 Burns 1901, §5735 R. S. 1881), and as such, by a specified corporate name, is vested with primary and exclusive authority to sue and collect demands due the county, except where the law provides otherwise. *Shilling* v. *State, ex rel.* (1902), 158 Ind. 185; *Board, etc.,* v. *Kimberlin* (1886), 108 Ind. 449, 454. But, where such boards refuse to prosecute an action for such demands, a taxpayer may maintain a suit therefor. *Zuelly* v. *Casper* (1903), 160 Ind. 455, 63 L. R. A. 133; *Land, etc., Lumber Co.* v. *McIntyre* (1898), 100 Wis. 245, 75 N. W. 964, 69 Am. St. 915; *Webster* v. *Douglas County* (1899), 102 Wis. 181, 77 N. W. 885, 78 N. W. 451, 72 Am. St. 870; *Zuelly* v. *Casper* (1906), 37 Ind. App. 186.

The suit was begun April 12, 1904, and the complaint alleges a demand on the board of commissioners and a refusal of the board to institute proceedings to collect the money alleged to belong to the county and illegally held by Eder. The title or introductory portion of the complaint specifically names the commissioners, and the first paragraph states that "the plaintiffs complain of the defendants and say  *  *  *  that, prior to the bringing of this suit, on March 28, 1904, and April 4, 1904, the plaintiffs did then and there demand of the defendants, Samuel A. Love, Oscar A. Krinbill, Mathew J. Brown, constituting the Board of Commissioners of Lake county, in the State of Indiana, that they, as such commissioners of said county, bring and prosecute an action to recover $300 from said defendant George M. Eder, but said defendants, con-

stituting said board of commissioners, refused to do so."
The second paragraph alleges that "the plaintiffs com-
plain of the defendants and allege  *  *  *  that the
plaintiffs on March 28, 1904, filed in the office of the
county auditor of said county of Lake their written
request to bring suit to recover said sum from said
George M. Eder; that on April 4 plaintiffs demanded of
said defendants, except the defendant George M. Eder, that,
as the board of county commissioners of said county, they
bring and prosecute such action · to recover said sum so
wrongfully held by said George M. Eder, and said defendant
commissioners refused to do so." Then follows a copy of
the demand addressed to "Samuel A. Love, Oscar A. Krin-
bill and Mathew J. Brown, Board of Commissioners of Lake
county; Indiana." In considering the claimed defects in the
complaint, §§341, 401 Burns 1901, §§338, 398 R. S. 1881,
must be kept in mind, for under these sections a pleading
will be sufficient if the facts are stated in language compre-
hensible to a person of common understanding, and the de-
fect therein pointed out "does not affect the substantial
rights of the adverse party." But this test for the construc-
tion of pleadings does not extend to relieve a plaintiff from
stating in plain and concise language all the facts necessary
for him "to prove in the first instance, under an answer of
general denial, to show that he is entitled to judgment."
Lake Erie, ·etc., R. Co. v. Holland (1904), 162 Ind. 406, 63
L. R. A. 948. It has been held that, where the parties are
named in the title of the action, allegations in the body of the
complaint which identifies them by reference are sufficient.
Cosby v. Powers (1894), 137 Ind. 694. In the case at bar,
the persons constituting the board were named not only in
the title, but in the body of· each paragraph of the complaint.
The allegations were sufficiently explicit to inform a person
of common understanding that the board of commissioners
was a party to the suit. This is all that the statute requires.

In support of the second error appellants insist that the

statute (§7848c Burns 1901, Acts 1897, p. 187, §6), provides the only remedy to be pursued by the citizens and tax-payers in cases of this character; that they must act within sixty days after an allowance is made; that the statute abrogates their right to proceed in equity. We cannot agree with appellant's theory in the construction of this statute. If the legislature had intended it to operate as a limitation of the time in which citizens and taxpayers might prosecute suits for the purpose of recovering back into the county treasury money paid on illegal allowances to officers or other persons, it certainly would not have left the matter to inference. The language of this statute is permissive in character. It contains no words which negative a taxpayer's right in such matters to adopt any remedy known to the law. Whether it was the purpose of the legislature "to provide a broader remedy than that afforded in equity" we are not concerned, as it is certainly true that the language used does not evidence an intention on the part of the legislature to abrogate the doctrine of equity affording relief at the instance of a taxpayer for money belonging to the county if paid on account of illegal allowance. *Kimble* v. *Board, etc.* (1904), 32 Ind. App. 377. The board of commissioners is a creature of the statute; "it has no authority beyond that expressly given by the statute" (*State* v. *Trueblood* [1900], 25 Ind. App. 437); it has no power or authority to allow any county or other public officer "any sum of money out of a county treasury except when the statute confers the clear and unequivocal authority to do so." §6548 Burns 1901, Acts 1883, p. 48, §7. The allowance by the board of an unauthorized or illegal claim is an act in defiance of the statute, and is unlawful and void, and its payment may be recovered, on the theory that it is not a payment by the county. §6548, *supra;* *Board, etc.,* v. *Heaston* (1896), 144 Ind. 583, 55 Am. St. 192; *Board, etc.,* v. *Buchanan* (1898), 21 Ind. App. 178. Therefore, in this class of cases, in the absence of a statute by its

terms negativing the right of a taxpayer to proceed in equity, he is not precluded from adopting that remedy. *Board, etc.,* v. *Harrington* (1823), 1 Blackf..*260; *Kimble* v. *Board, etc., supra; Zuelly* v. *Casper* (1903), 160 Ind. 455, 63 L. R. A. 133

Lastly, appellant contends that the court erred in its conclusions of law. Under this head it is argued that the charge made by the clerk of the circuit court for naturalizing foreigners belonged to such clerk as his own; that payments made by officers that are not due and owing to the county may be recovered; that the acts of the board of commissioners can only be proved by its record; that the special findings do not show a refusal by the board to institute an action against Eder prior to the time it was commenced by appellees. The special findings show that Eder was clerk of the Lake Circuit Court from November, 1891, until November, 1899; that during the year 1896, at the direction of the officers of the republican central committee of Lake county, 300 unnaturalized foreigners in said county applied to Eder, as such clerk, for what is known as ''first naturalization papers;'' that, by virtue of an agreement between said officers and Eder, and at the special instance and request of said committee, and its promise and agreement to pay the costs of issuing said papers, said Eder issued to said applicants papers of naturalization; that the statutory charge amounted to $300; that nothing was said to these applicants about paying therefor, nor was any money collected from said applicants or any other person by Eder on account of such services; that after the issuing of said papers by Eder, as clerk, said committee refused to pay the bill therefor, and on December 5, 1896, after said committee had declined to pay said sum of $300, said Eder, out of his own private funds, paid to the treasurer of Lake county, to the credit of the clerk's fund, $300 to cover the cost of naturalizing said foreigners, and the only money paid to said county on account of said services; that the money so paid was ap-

propriated and used by the county; that on August 20, 1903, Eder filed in the office of the auditor of said county a claim against the county for the return of the money so paid by him; that on September 9, 1903, at the regular meeting of the board, the claim was allowed and a warrant ordered drawn for its payment; that the warrant was drawn and delivered to Eder, who presented the same to the treasurer of the county, who paid it out of the county funds; that Eder received the money and has ever since retained the same.

There is no claim that the original payment by Eder was made by him through inadvertence, mistake, or ignorance of any fact, nor that such payment in fact affected the amount of his salary, which he would otherwise have received. He paid $300 into the "clerk's fund" (§6530 Burns 1901, Acts 1895, p. 319, §124), out of which his annual salary of $3,000 (§6491 Burns 1901, Acts 1895, p. 319, §86), was paid. Under the law (§6532 Burns 1901, Acts 1897, p. 31), his salary was payable quarterly upon the order of the commissioners. The amount of his quarterly allowance, not exceeding the quarterly salary due, depended upon fees collected and turned into the county treasury, to the credit of the "clerk's fund." Any balance of his salary due and unpaid at the close of his term of office was payable only out of fees earned by him during his term of office, and afterwards collected by his successor (§6533 Burns 1901, Acts 1895, p. 319, §127).

It does not appear from the findings that the fees collected by Eder, as such clerk, and paid to the county treasurer, and the fees earned by him and collected by his successor, together with the $300, exceeded his salary. If it did not, he could not have been injured by the $300 payment, voluntarily made by him. He cites §§7913, 7914 Burns 1901, §§5811, 5812 R. S. 1881, as authorizing the action of the board in allowing his claim, and in support of his right to retain the money received on such allowance.

The rule is that where a party relies on a right given by

statute he must bring himself clearly within its provisions. The statutes cited by Eder authorized the board of 6. commissioners to make repayment out of the proper funds of the county to county officers for overpayments to such commissioners by such officers "through inadvertence, mistake, or any other cause." In the case at bar there is no finding that the claimed overpayment was made through inadvertence, mistake, or other cause found to be unconscionable, unjust, or inequitable if retained by the county, for, as we have pointed out, such claimed overpayment may have been returned by the county in the way of payment on his salary. With this view of the case, Eder was not within the rule that payments made by county officers that are not justly due and owing to the county may be recovered back.

By the fee and salary act in force June 28, 1895 (Acts 1895, p. 319, §114, §6519 Burns 1901), it was the duty of Eder, as clerk, to tax and charge each applicant to 7. whom naturalization papers were issued a fee of $1. This fee is specifically designated in the statute as an item to be taxed and charged on behalf of the county, and, under the ruling of the Supreme Court and this court, it was the property of the county. *State, ex rel.,* v. *Flynn* (1903), 161 Ind. 554; *Board, etc.,* v. *Given* (1907), 169 Ind. —, 80 N. E. 965; *Starr* v. *Board, etc.* (1907), *ante,* 7.

On the question whether the special findings show a refusal of the board to institute an action against Eder, our attention is called to the following special findings: 8. "(6) That appellees on April 4, 1904, in writing, demanded of the defendants, constituting said board of commissioners, as such board, that they prosecute an action against Eder to recover said $300 so held by him. (7) That said board of commissioners did not at the time make any record with reference to said demand and that no record was made by them that they would comply with the demand, or that they would refuse to comply with the de-

mand, neither was any record made by them that they declined to take any action with reference to said claim; that, in truth and in fact, said board of commissioners did not take any action with reference to said claim, but the members thereof, while in session, stated verbally that they would not take any action with reference to said demand, but said verbal statements were not made a matter of record by said board, or any one acting for them, and there is no record of said board showing any action by them on said demand or any refusal by them to take any action upon said demand." Before appellees would be entitled to a conclusion of law in their favor, the special findings must show the ultimate fact that the board of commissioners refused to institute the action against Eder, afterwards begun and prosecuted by appellees. While the greater part of what is designated as finding seven, is evidentiary only, it does appear that "the members thereof [speaking of the board of commissioners], while in session, stated verbally that they would not take any action with reference to said demand," which practically amounted to a refusal to institute the proceedings against Eder, and was sufficient.

In regard to the board's speaking only by its record, it may be said that, when it acts in a judicial capacity, appellants correctly state the rule. But in the allowance of claims, and in the exercise of the right to refuse to institute the action against Eder to recover the money belonging to the county, it acted in an administrative capacity, and such acts may be shown by parol. *McCabe* v. *Board, etc.* (1874), 46 Ind. 380; *Board, etc.,* v. *Heaston, supra; Tucker* v. *State, ex rel.* (1904), 163 Ind. 403.

Judgment affirmed.