Webster and others vs. Douglas County and others.

BARDEEN, J., took no part.

WEBSTER and others, Appellants, vs. DOUGLAS COUNTY and others, Respondents.

*December 19, 1898 — February 21, 1899.*

*Public officers: Injunction against illegal payments: Compelling repayment: Action by taxpayers: Laches: Innocent purchasers of warrants: Counties: Limitation on highway expenditures: Violation of injunction: Interest: Costs.*

1. A taxpayer may maintain an action in equity, on behalf of himself and all other taxpayers, to restrain public officers from paying out the public money for illegal purposes, and may also, under the

|     |     |
|-----|-----|
| 102 | 181 |
| 102 | 7 |
| 102 | 181 |
| 107 | 503 |
| 107 | 601 |
| 102 | 181 |
| 109 | 371 |
| 102 | 181 |
| 111 | ¹274 |
| 111 | ¹473 |
| 102 | 181 |
| 117 | ¹ 74 |

proper circumstances, compel public officers and even third persons to repay into the public treasury money already paid out illegally.

2. Under sec. 1308, R. S. 1878, providing that any county board may annually levy "a county road tax not exceeding $8,000, which shall be expended under their direction in making culverts, grading, graveling, ditching, or otherwise improving " highways which have been adopted as county roads or designated for the purpose of spending money in their repair, the amount which a county may spend upon highways in any one year is limited to the amount previously raised by tax. Whatever was said to the contrary in *Harrison v. Milwaukee Co.* 51 Wis. 645, is overruled.

3. Although a taxpayers' suit to enjoin an illegal expenditure of money upon highways pursuant to an unauthorized resolution of the county board was not commenced until after a part of the work had been done and some payments had been made thereon, it is *held* that this was not such laches as would bar the action in respect to future work.

4. An injunctional order forbidding county officers to expend any money or do any work on highways pursuant to an unauthorized resolution of the county board, or until after a road tax should thereafter be levied, was modified so as to allow necessary repairs to be made upon county roads or roads which had been designated for the expenditure of county money. *Held*, that this merely permitted such repairs as were necessary to make travel safe, and did not allow general road work, as contemplated by the resolution, to be carried on.

5. The deliberate disobedience of the injunctional order by the county officers in proceeding with general road work and paying for the same could not be in good faith, nor could there be any ratification of their act by the county board, or any estoppel, which would nullify the command of the court.

6. The county officials who assisted in such violation of the injunction, either by voting the issuance of orders or by countersigning the same or by paying out the money thereon, as well as the persons who received the money, to the extent of the amounts respectively received by them, should be required, in a taxpayers' action, to repay to the county treasury the sums so wrongfully paid out.

7. Moneys paid out by public officers in direct violation of law may be recovered from the officials themselves and from the recipients thereof, in actions seasonably brought by taxpayers on behalf of the public, especially where the transaction is marked by haste, fraud, collusion, or concealment.

Webster and others vs. Douglas County and others.

8. But a court of equity will not, in such an action, require repayment from one who, for a valuable consideration and in good faith, had purchased county warrants issued in payment for work done under illegal contracts, where, notwithstanding the public nature of the proceedings and of the work, the action was not brought until after a large part of the work had been done and the warrants in question had been issued and paid.

9. Where, at the suit of taxpayers, public officers and contractors are held liable to repay moneys illegally obtained from the public treasury, they should be charged, also, with interest from the time such moneys were unlawfully drawn out.

10. In an action by taxpayers to restrain public officers from paying out public moneys illegally and to compel repayment of moneys already so paid out, it is *held* that costs should be allowed upon final judgment against the defendants.

APPEAL from a judgment of the circuit court for Douglas county: W. F. BAILEY, Judge. *Affirmed as to the defendant Duluth Trust Company; reversed as to the other defendants.*

This is an action in equity commenced August 7, 1894, by the plaintiffs, as taxpayers of *Douglas* county, on behalf of themselves and all others similarly situated, against the county, its supervisors, treasurer, and clerk, together with certain contractors for highway work, to enjoin the alleged illegal expenditure of $8,000, which was then about to be expended in repairing highways throughout the county. A preliminary injunctional order was obtained at the time of the commencement of the action, and served with the summons and complaint; but on the 4th of August twelve warrants had been issued, signed by the chairman of the board of supervisors and the county clerk, to various parties who had done work upon the highways, aggregating $2,984.75, and on the 6th of August nine of these orders were paid by the county treasurer aggregating $2,342.95. Thereupon an amended complaint was served early in September, alleging the issuance and payment of these last-named orders, and claiming that such payment was collusive and with intent to defeat the action, and claiming to recover all money so

paid of the defendants who had received it as well as to enjoin any further payments. On the 28th of December following, a second amended and supplemental complaint was served, and additional defendants were brought in by leave of court. By this complaint it was charged that the county board had paid out $4,402.63 upon illegal highway work in addition to the $2,342.95 previously paid out, and it was sought to recover this sum of the officials who had paid it out, as well as of the parties who had received it, and to enjoin any further payments. The pleadings are long, and it is not deemed necessary to state them any more fully. The facts were mostly admitted upon the trial, and were, in substance, as follows:

In the county of *Douglas,* outside of the city of Superior, there are four towns, to wit, Superior, Gordon, Brule, and Nebagamain, and there were, at the time of the commencement of the action, thirteen members of the board of supervisors, all of whom were made defendants in this action. At the November meeting, 1893, the board of supervisors levied a county road tax of $8,000, under the provisions of sec. 1308, R. S. 1878. Prior to the 5th of June, 1894, all of this $8,000 had been spent upon the highways in the county. On the 5th of June the following resolution was passed by the board of supervisors: "Whereas, the road and bridge committee of *Douglas* county find that the roads and bridges throughout the county are in need of repairs: Therefore, be it resolved that the county board be requested to levy a tax of eight thousand dollars ($8,000.00) at the annual meeting in November next, for road and bridge purposes, said levy to be equally divided between the towns of Brule, Gordon, Superior, and Nebagamain; and that the chairmen of the various towns are authorized and instructed to expend two thousand dollars ($2,000.00) in their various towns under and by direction and recommendation of the road and bridge committee of said county of *Douglas.*"

Work immediately commenced under this resolution, consisting of filling, grading, and ditching various roads in the several towns of the county, but no road commissioners were appointed to superintend the work, nor any bonds required from contractors, as required by sec. 1309, R. S. 1878. On the 3d of August, 1894, the county board of supervisors adopted the following resolution: " Whereas, it is evident that the money levied for normal school purposes will not be required until November: Resolved, that eight thousand dollars ($8,000.00) of that amount be transferred to the road and bridge fund, and, when the road and bridge levy is made at the annual meeting, the same shall be credited by the county clerk to the normal school fund, the same to be expended on county roads."

On the same day they allowed the following bills for work which had been done under the resolution of June 5th, viz.: A claim for $1,007.25 in favor of the defendant *McLaggan* for road work in the town of Gordon; also a claim in favor of the defendant *Agen* for $41.80 for road work done in said town of Gordon; also a claim in favor of the defendant *Cassidy* for road work done in the town of Nebagamain for $1,008; also a claim in favor of the defendant *Cloney* for road work done in the town of Nebagamain amounting to $927.70. On the following day twelve county orders were issued for the bills so allowed, and delivered to the defendants in whose favor they were allowed, and on the 6th day of August, being the day before the injunctional order was served, nine of said twelve orders were presented and paid, four of which orders, amounting to $1,008 and covering the claim of *Cassidy*, were paid to the defendant *McClure*, who was a supervisor from the town of Nebagamain, and to whom *Cassidy* had indorsed the orders. The *McLaggan* orders, amounting to $1,007.25, were paid to the defendant the *Duluth Trust Company*, to whom *McLaggan* had indorsed them; and the order for $327.70, being one of the

*Cloney* orders, was paid to the defendant *O. K. Anderson*, the county clerk, to whom it had been transferred.

On the 7th of August, 1894, the preliminary injunctional order was served with the summons and complaint, which enjoined the board of supervisors from proceeding to expend money. or doing work under the resolution of June 5, 1894, and from expending any money or doing any road or bridge work until after a road tax, not exceeding $8,000, should be thereafter levied at the annual meeting, and from expending anything after such levy "except on main traveled highways legally laid out and duly and legally adopted as county roads," and from allowing any bills for road or bridge work until after such levy, and then only for work performed after the levy, and from signing or issuing any county orders for such bills; also enjoining the county treasurer from paying any orders previously issued, including the orders issued on the 4th of August in favor of *McLaggan, Agen, Cassidy,* and *Cloney.* On the 3d of September following, this temporary injunctional order was modified by the circuit court by striking out the words, "except upon main traveled highways legally laid out and duly and legally adopted as county roads," and inserting in place thereof the following words, viz. "except main traveled highways or parts of said highways duly and legally adopted as such, or such highways or parts thereof duly and legally designated for the expenditure of county money in their repair, pursuant to section 1308 of the Revised Statutes, and except in the exercise of the powers conferred upon counties pursuant to section 1311 of the Revised Statutes," and by adding thereto the following provision: "Ordered, further, that said injunctional order be, and the same is hereby, modified so far as the same enjoins the county board from proceeding in the manner provided by law to make necessary repairs upon roads mentioned in the above exceptions, such repairs to be paid for out of the next levy regularly made for such purposes; but the is-

suing of county orders therefor in advance of such levy, or the taking of funds heretofore raised by taxation for any other special purpose, to pay for any such repairs, are hereby, during the pendency of said action and until the further order of the court, strictly enjoined."

Notwithstanding this order, work proceeded upon the highways of the county under the resolution of June 5th, which work was principally grading and ditching; and at the annual meeting of the board of supervisors in November, 1894, the county board duly levied $8,000 as a county road tax, under sec. 1308, R. S. 1878. At an adjourned meeting of said board of supervisors, held on the 22d of December, 1894, at which seven supervisors only were present, the remaining bills for the work done under the resolution of the 5th of June were allowed, and county orders directed to be issued therefor, and were almost immediately issued, to the various persons who had performed such work, or to whom the claims for such work had been assigned, all of whom are made defendants in this action. The greater part of these orders were paid by the county treasurer on the same day. At that time there was no money in the road and bridge fund of the county, and could not be until the taxes levied at the November meeting were collected. There was much dispute as to whether the highways upon which the work had been done had been adopted as county roads, or whether they had been so designated, under sec. 1308, that the county might properly spend its funds in improving them; but, in the view which is taken of the case, it is not deemed necessary to go into this dispute.

It was undisputed that the contracts for the work which was done under the resolution of June 5th were not made by road commissioners appointed by the board of supervisors, and that no bonds, as required by sec. 1309, were ever given by the contractors for the performance of their duties, but that each chairman made the contracts for the

work done within his town. It was further undisputed that none of such highway work for which the bills aforesaid were allowed was done under the provisions of sec. 1311, R. S. 1878, nor was the same bridge work done under secs. 1319, 1320, R. S. 1878.

The plaintiffs alleged that much of the work was fraudulent in its nature, and that certain of the board of supervisors participated in the fraud and profited in the contracts, and that all of the defendants who received money upon the county orders were participants in the fraud. These allegations of bad faith, however, were negatived by the court, which found that all the contracts were made in good faith, were fully performed, and were allowed in good faith; that there was no conspiracy on the part of the supervisors, or any of them, to defraud the county, and that none of them received any profit from such work, and that the county board believed that they might issue the orders which they drew without violating the injunction, and that they acted upon the advice of counsel in so doing; that the defendant the *Duluth Trust Company* purchased the order held by it for a valuable consideration, and in good faith, with no knowledge of any irregularity therein. The court concluded that the plaintiffs could not maintain this action; that the roads on which the money was expended were duly designated for that purpose; and that the contracts for the road work in controversy were legal contracts, and were executed at the time of the commencement of this action.

In pursuance of these conclusions the complaint was dismissed, and the plaintiffs appeal.

For the appellants there were briefs by *Frederick H. Remington*, attorney, and *Titus & McIntosh*, of counsel, and oral argument by *Mr. Remington* and *Mr. A. C. Titus*.

For the respondents there was a brief by *C. R. Fridley*, *Loud & O'Brien*, and *McCausland & Smith*, and oral argument by *C. R. Fridley*, *P. H. O'Brien*, and *E. F. McCaus-*

*land.* They argued, amóng other things, that this was not a case in which one taxpayer could sue in his own behalf and obtain relief, and consequently he could not unite other taxpayers with him. *Doolittle v. Broome Co.* 18 N. Y. 157; *Wood v. Bangs,* 1 Dak. 172; *Newcomb v. Horton,* 18 Wis. 566; *Willard v. Comstock,* 58 Wis. 571. The limitation upon the amount of tax that can be levied is not a limitation upon the amount which may be expended. *Harrison v. Milwaukee Co.* 51 Wis. 661–2; *Howard v. Oshkosh,* 33 Wis. 309; *Kinsey v. Pulaski Co.* 2 Dill. 253; *Emerson v. Blairsville,* 2 Pittsburgh, 39; *People ex rel. Murphy v. Kelly,* 76 N. Y. 475. The acts of the town chairmen were ratified by the county board with full knowledge of the facts. *Trester v. Sheboygan,* 87 Wis. 496; *Hark v. Gladwell,* 49 Wis. 172; *Frederick v. Douglas Co.* 96 Wis. 411. The officers were not guilty of any fraud, and were not liable to refund the money. *Wood v. Bangs,* 1 Dak. 172.

The following opinion was filed January 10, 1899:

WINSLOW, J. It is well settled in this state that a taxpayer may maintain an action in equity, on behalf of himself and all other taxpayers, to restrain public officers from paying out the public money for illegal purposes, and may also, under the proper circumstances, compel public officers, and even third persons, to repay into the public treasury money already paid out illegally. These propositions do not require further discussion. *Willard v. Comstock,* 58 Wis. 565; *Frederick v. Douglas Co.* 96 Wis. 411; *Quaw v. Paff,* 98 Wis. 586; *Land, L. & L. Co. v. McIntyre,* 100 Wis. 245, 258.

The crucial question in this case is whether the county could legally spend more than $8,000 in one fiscal year upon highways, under the provisions of sec. 1308, R. S. 1878. This section, after providing that county boards may adopt highways or parts of highways as county roads, or may designate highways or parts of highways for the purpose of

spending money in their repair without adopting them as county roads, then provides that any county board "may annually levy, on the taxable property of the county, a county road tax not exceeding eight thousand dollars, *which* shall be expended under their direction, in making culverts, grading, graveling, ditching or otherwise improving such highways."

It seems very manifest to us, from a careful reading of the section, that the amount of the tax fixes the amount which may be expended in any one year. The amount is plainly limited to the amount previously raised by the tax. The board may first raise a sum, and then *spend* it. Whatever is said to the contrary in *Harrison v. Milwaukee Co.* 51 Wis. 645, was not necessary to the decision of that case, and must be considered as overruled. See *Kane v. School Dist.* 52 Wis. 502.

In the present case the board raised $8,000 by tax levied in November, 1893, and spent the entire sum before the 5th of June, 1894. They then proposed to spend $8,000 more, and pay for the work temporarily out of the normal school fund, and finally out of the levy to be made in November, 1894. This they had no power nor right to do. They however proceeded, not in the manner required by sec. 1309, but in a lawless and irregular manner, to parcel out $2,000 to each of the chairmen of the four county towns, and to allow each chairman to spend his portion as he chose. To say that this entire proceeding was irregular and illegal is to speak of it very mildly. The plaintiffs brought their action after the work had begun, and just after about $2,300 of orders had been issued and paid. Laying aside, for the moment, all questions as to the status of the sums which had thus been paid out before the action was begun, we can see no reason why the plaintiffs did not present a case which would require all further work and payments to be stopped. Certainly, it cannot be said that there was laches so far as

future work was concerned, and, as we have already indicated, the expenditure was clearly illegal.

The temporary injunctional order, in no uncertain terms, prevented the board from carrying out the work which had been illegally commenced under the resolution of June 5th. It forbade absolutely the allowance of any bills, or the payment of any orders, for any such work done thereafter and prior to the next tax levy. The only substantial change in this prohibition, which was made by the modifying order of September 3d, so far as the present question is concerned, was to allow necessary repairs to be made upon county roads or roads which had been designated for the expenditure of county money. The purpose and meaning of this modification was to allow the board to make emergency repairs, or such repairs on roads as were *necessary* to make travel *safe*, so that the duty of the county to travelers upon its highways might still be discharged. It is idle to say or to argue that the meaning of the modification was to allow general road work, as contemplated by the resolution of June 5th, to be carried on under new contracts. If such was its meaning, then it was not a modification, but an abrogation, of the injunctional order, and the proper course would have been to vacate the original order. New contractors were found who were willing to go on with the work and take their chances. A majority of the county board, after the tax levy of November, 1894, pretended to accept the work, and a considerable part of it was paid for. It is said, and gravely found by the circuit court, that this was all done in good faith! There is as little room for good faith in the deliberate disobedience of an injunctional order as there is in the deliberate commission of a crime. Nor is there room for ratification or estoppel. The plain fact is that the acts of the public officials and contractors, after the injunctional order of August 7th was issued and served upon them, in proceeding with general road work, and in

issuing orders to pay for the work, and in actually paying for a good part of it, were and are utterly indefensible. They were deliberate contempts of court. They could not be in good faith, under such circumstances, nor can acts of ratification or estoppel nullify the command of the court. By the temporary injunction the parties to the action were commanded to refrain from further action until the controversy was heard upon its merits and decided, so that the final judgment might be effective. This order has been disobeyed, and large sums have been paid out by the county officers in defiance of the order. Now, at the close of the litigation, it is found that the preliminary injunction should be made permanent; but the *status quo* has been changed by disobedience of the preliminary order, and this disobedience is alleged to have been a disobedience in good faith, and a disobedience which the county board has ratified and condoned. These claims are manifestly absurd.

The work, under the resolution of June 5, 1894, was illegal from start to finish. After the injunctional order of August 7th, it should have stopped at once in obedience to the order of the court; but the order having been disobeyed and a large part of the money having been paid out, the officials who assisted in the violation of the injunction, either by voting the issuance of orders or by countersigning the same, or by paying out the money thereon, as well as the defendants who received such moneys, to the extent of the amounts respectively received by them, must be required by the judgment to repay to the county treasury the sums so wrongfully paid out.

The question of the recovery of the sums paid out on the 6th of August, just prior to the commencement of this action, is now to be considered. The total amount then paid out was $2,342.95, of which $1,008 was paid to the defendant *McClure*, chairman of the town of Nebagamain, and also chairman of the county board, upon four orders issued

to the contractor *Cassidy*; and indorsed by him to *McClure* for the convenience of *Cassidy;* $1,007.25 was paid to the defendant the *Duluth Trust Company* upon four orders issued to the contractor *McLaggan*, and purchased by the company of *McLaggan;* and $327.70 was paid to the defendant *O. K. Anderson*, then county clerk of *Douglas* county, upon an order issued to the contractor *Cloney* and by him transferred to *Anderson.* As to the moneys paid to *McClure* and *Anderson*, as assignees of the *Cassidy* and *Cloney* orders, the situation is not doubtful. Both of these defendants were public officials, charged with important duties in relation to the expenditure of the public moneys. They were trustees of the public funds. Among other duties, both of these officers were required to countersign all county orders. R. S. 1878, secs. 667, 709, subd. 3. It was their sworn duty to issue no orders for highway work, under sec. 1309, until a committee of three had viewed the work and reported that the same was done in accordance with the contract. This duty they violated flagrantly. Not only was there no such inspection of the work, but the bills were railroaded through the board on the day of their presentation or on the following day, when there were no moneys in the fund to pay them, evidently with a settled design to give no opportunity for inspection. The warrants were immediately indorsed by the contractors to the defendants *McClure* and *Anderson*, respectively, and the money drawn out of the treasury. It is true the court has found that the defendants in question had no pecuniary interest in the transaction, and that they acted in good faith, but even these findings cannot relieve them from liability for their breach of trust in drawing out of the treasury money for a purpose not authorized by law. Such money they must return, even if they had no wicked intent; but we do not think the circumstances in proof admit of a finding of good faith. The allowance of these accounts and payment of these mon-

eys were marked by haste and apparent collusion with the contractors which requires an explanation more convincing than any which appears in the evidence in this case. The presumption of fraud which necessarily arises from the allowance of illegal bills so hastily, when there were no funds in the treasury to pay them with, the money being drawn out by the auditing officers themselves, has not been met and rebutted. Under the authorities cited in this opinion in our own state, as well as the authorities cited in *Frederick v. Douglas Co., supra,* we hold that the defendants *McClure* and *Anderson* must be held liable to return the county funds so received by them. The general principles of law laid down in the cases of *Frederick v. Douglas Co.* 96 Wis. 411, and *Land, L. & L. Co. v. McIntyre,* 100 Wis. 245, 258, are applicable to this case. Moneys paid out by public officers in direct violation of law may be recovered from the officials themselves, and from the recipients thereof, in actions which are seasonably brought by taxpayers on behalf of the public, especially where the transaction is marked by haste, fraud, collusion, or concealment. The evidences of haste, collusion, and concealment in this case are too plain to be overlooked or misunderstood, and it is evident that the contractors *McLaggan, Cassidy, Cloney,* and *Agen* actively assisted the disbursing officers in their efforts to deplete the treasury before interference by action was possible, and hence they must also be held liable to the extent of the moneys received by them, respectively.

As to the moneys paid to the *Duluth Trust Company,* the court found that the orders held by the company were purchased for a valuable consideration, and in good faith, and with no knowledge of any conspiracy or irregularity in the expenditure of the money. These findings are sufficiently supported by the evidence, and we think they must be held to free the defendant trust company from liability in this form of action, at least. It is true that the orders possess none of the qualities of negotiable paper, and that the holder

stands in the shoes of the payee.   1 Dillon, Mun. Corp. § 503.
Had payment been refused by the county treasurer, and ac-
tion been brought against the county upon them, all the
defenses which could have been urged against the original
holder could have been urged against the transferee.   But
the question here is quite different.   The resolution under
which the work in question was done was adopted June 5,
1894, and work was at once commenced under it, so that
nearly $3,000 worth of highway work had been done on the
3d of August before this suit was commenced.   The resolu-
tion was public in its nature, the work was also public, and
we feel that the neglect in bringing the action until after
so much work had been done, and orders issued and nego-
tiated in the hands of innocent third persons, must operate
to prevent recovery against such third persons, upon the
principle of laches, as laid down in the case of *Frederick v.
Douglas Co.* 96 Wis. 411.   The plaintiffs have invoked the
relief of a court of equity, and they have delayed in so doing
until serious injury will result to a party who had no par-
ticipation in the illegal contract, if the plaintiffs be allowed
to recover.   We are not now discussing the rights or rem-
edies of the county itself, in a proper action brought by its
officers to recover funds illegally obtained from the treas-
ury, but simply what a court of equity will do when its aid
is invoked by a taxpayer who might have brought his suit
earlier and prevented the mischief, had he chosen to do so.

The defendant trust company cannot be held liable in
this action.   The supervisors who authorized the illegal con-
tracts and expenditures must, however, be held liable, and
the auditing and disbursing officers, as well as the contract-
ors and their assignees, to the extent of the amounts received
by them, respectively, after the commencement of this ac-
tion.

*By the Court.*— As to the defendant *Duluth Trust Com-
pany*, the judgment is affirmed, without costs, except attor-

ney's fees; and, as to the remaining defendants, the judgment is reversed, with costs, and with directions to enter judgment for the plaintiff in accordance with this opinion.

The following opinion was filed February 21, 1899:

WINSLOW, J.  A motion is made to correct the mandate in this case so that it shall direct the allowance of interest upon the sums drawn out of the county treasury.  It is apparent that interest ought to be allowed from the time the moneys were unlawfully drawn out, and the opinion and mandate will be amended so as to direct that such interest be allowed.  The motion also asks that the trial court be directed to allow costs against the defendants upon final judgment.  Certainly there can be no question but that the defendants should be adjudged to pay the costs of the action, and the circuit court should be directed to enter such judgment.

*By the Court.*—It is so ordered.

BARDEEN, J., took no part.