**STATE et al. v. STICKLE et al.   (No. 10200.)**

Court of Civil Appeals of Texas.  Dallas.
Oct. 20, 1928.

Rehearing Denied Dec. 22, 1928.

Robert L. Hurt and Francis M. Chaney, both of Dallas, for appellants.

King S. Williamson, Geo. T. Burgess, and R. L. Stennis, all of Dallas, for appellees.

VAUGHAN, J. This suit was instituted in the court below by the state of Texas, by and through the district attorney of Dallas coun-

ty, Tex., and joined by L. S. Harper, a taxpayer of Dallas county fresh-water supply district No. 7, who became such actor for himself and all other taxpayers of said fresh-water supply district similarly situated, and for the benefit of said district No. 7, against W. A. Catlett, Frankie E. Catlett, Wesley Bennett, R. H. Snow, and W. P. Bozarth, as supervisors of said fresh-water supply district, and the American Surety Company of New York, a private corporation, as surety on their respective official bonds as such supervisors, and W. A. Stickle, Mrs. R. M. Stickle, Stickle Lumber Company, a private corporation, and Maple Lawn Highlands Company, a private corporation, as defendants.

Plaintiffs alleged: That Dallas county fresh-water supply district No. 7 was an administrative agency of the state of Texas, created under and by virtue of an act of the Legislature, for the purpose of supplying fresh water to the people of said district. That said W. A. Catlett, Frankie E. Catlett, Wesley Bennett, R. H. Snow, and W. P. Bozarth, were the duly elected, qualified, and acting supervisors of said district. "That the said supervisors of Dallas County Fresh Water Supply District No. 7 made, executed and filed with the County Clerk of the County of Dallas, Texas, a surety bond as required by law in the principal sum of $5,000.00 each, conditioned that the said supervisors would faithfully discharge the duties of their respective offices." That the American Surety Company of New York was surety on each one of said bonds. The bonds were set out in full, each being identical in every respect except as to the principal, and in the following language (the name of the principal being omitted): "That we, ———, as principal, and the American Surety· Company of New York, as surety, are held and firmly bound unto Dallas County Fresh Water Supply District No. 7, his successors in office, in the sum of Five Thousand Dollars ($5,000), for the payment of which we hereby bind ourselves and our heirs, executors and administrators, jointly and severally, by these presents. Signed with their hands and dated this 10th day of September, 1925. The condition of the above obligation is such, that, whereas, the above bound ——— was, on the thirty-first day of August, 1925, duly appointed to the office of supervisor in·and for Dallas County, in the State of Texas; now, therefore, if the said ——— shall faithfully perform and discharge all the duties required of him by law, as supervisor aforesaid, then this obligation to be void, otherwise, to remain in full force and effect." That said fresh-water supply district voted and issued bonds in the sum of $85,000, which constituted a binding obligation upon the property of said district. That said bonds were sold for the sum of $85,670.-68. That said supervisors disbursed and paid out said sum of money received from sale of said bonds, as follows:

| | |
|---|---|
| To Maple Lawn Highlands Company, a corporation owned by A. W. Stickle and wife, Mrs. R. M. Stickle, the sum of.... said sum so paid being an exaggerated, exhorbitant and capricious price, said system not being worth more than $1,-000.00. | $ 3,300 00 |
| To the Stickle Lumber Company, the sum of ........................................ for an interest in a certain water well of the approximate value of $4,000.00. | 60,000 00 |
| To A. W. Stickle the sum of.................. for property of the approximate value of $1,400. | 9,400 00 |
| To J. E. Blaine, for his services in promoting 'thei said unlawful fraudulent scheme and in selling the bonds, an unlawful and capricious price in the sum of | 9,107 60 |

Plaintiffs further alleged: "That the entire water system purchased could not be worth at its highest valuation more than the sum of $12,000.00, for which said supervisors paid the sum of $72,200.00; that the services in connection with the sale of the bonds and organization of the district were not worth more than the sum of $4,000.00, valued at a high and exhorbitant price, for which the supervisors paid the sum of $9,107.60; that the said supervisors were wholly without authority to impose upon said district, and the tax-payers thereof, the excessive and unreasonable burden represented by the purchase of the said waterworks. That in the employment of agents and the purchase of equipment, said supervisors were bound to exercise sound judgment and discretion and proper economy pursuant to the trust and confidence reposed in them by virtue of their office * * * that the aforesaid purchase of equipment of said district and the payment for services by the said supervisors were not exercised in accordance with the obligations incident to the powers devolving by law upon the said supervisors, but were entered into fraudulently, arbitrarily and capriciously and for the benefit of the defendants, and the effect thereof was to impose an unreasonable burden upon all tax-payers of said district * * * that the prices paid, as set forth herein, were so grossly excessive and extravagant as to constitute the purchase of said waterworks by the defendants a fraud upon the said district and the tax-payers thereof; that by reason of the fraud, as set forth herein, the defendants have damaged the said district in the sum of approximately One Hundred Thousand Dollars ($100,000). * * * that by reason of. the matters as hereinbefore set out, the condition of said bonds have been breached and that the said American Surety Company of New York has become liable and bound to pay to the said Dallas County Fresh Water Supply District No. 7, as damages, the amounts set forth in the said hereinbefore alleged bonds * * * that said damages were suffered by reason of the unfaithful performance of the duties of the said supervisors, and each of them."

As to the prayer of said petition, it is only

necessary to note the following: "That upon a final hearing hereof, plaintiffs, for the benefit of Dallas County Fresh Water Supply District No. 7, have judgment for damages against the defendants, jointly and severally, in the sum of $100,000.00, or, in the alternative, that the contracts upon the purchase of waterworks system by district be cancelled and purchase price be returned to water district, and for such other and further relief, general and special, in law and in equity, to which it may be justly entitled."

The petition contains many other allegations in reference to the proceedings had, beginning with and leading up to the organization of the district and allegations upon which the appointment of a receiver was sought. Under the view we take of this case, we find it not necessary to discuss said allegations. All of the appellees (defendants) duly answered by way of general demurrer and other pleas. However, under the judgment rendered, it will only be necessary to discuss the general demurrer of appellee Stickle Lumber Company to appellants' petition, for, as we view the matter, the judgment in behalf of the other appellees was based upon the sustaining of said demurrer to appellants' (plaintiffs') petition.

Under leave of the court, appellants T. J. Crowe, R. J. Blackburn, H. E. Spaulding, and B. S. Wathen, on April 27, 1927, filed their plea of intervention in this cause, and on the 6th day of May, 1927, an interlocutory order was entered on motion of appellee Stickle Lumber Corporation, striking from the file said plea of intervention, and further sustaining the general demurrer urged thereto by said appellee. To this ruling, interveners excepted and gave notice of appeal to the proper court. On the 5th day of May, 1927, another interlocutory order was entered on the hearing of the application of the plaintiffs, the state of Texas et al., for the appointment of a receiver for appellee Stickle Lumber Corporation, and of the general demurrer of said appellee to plaintiffs' petition, presented by way of an abatement of said suit and its general demurrer to said petition, by which it was decreed that "the order heretofore entered in this cause overruling the pleas in abatement of defendant, Stickle Lumber Corporation, and the general demurrer to plaintiff's petition, be, and the same are hereby set aside, and it is ordered that, the said pleas of abatement be, and the same are hereby, in all things sustained, and the said general demurrer is sustained." Plaintiffs excepted to said order, and gave notice of appeal therefrom to the proper court. On the 7th day of June, 1927, the following final judgment was entered in this cause by the trial court:

"It is ordered, adjudged and decreed by the court that the general demurrer of the defendant, Stickle Lumber Corporation, to the plaintiff's petition, be, and it is hereby, sustained, and judgment is entered accordingly in favor of the defendant, Stickle Lumber Corporation, A. W. Stickle, Mrs. R. M. Stickle, Maple Lawn Highlands Company, W. A. Catlett, R. H. Snow and Frankie E. Catlett, W. P. Bozarth, Wesley Bennett and American Surety Company of New York, to which action of the court the plaintiffs then and there excepted and gave notice of appeal to the Fifth Supreme Judicial District of Texas. It is further ordered, adjudged and decreed by the court that, the intervention of T. J. Crowe, et al. is hereby denied and said intervention is hereby dismissed, without prejudice to their rights to prosecute an individual suit in the premises. It is further ordered and adjudged by the court that defendant, Stickle Lumber Corporation, have and recover the costs in this behalf incurred, against the plaintiffs, and for this let execution issue."

■ Interveners, T. J. Crowe et al., did not except to and appeal from the final judgment, and their attempt to join in the appeal duly perfected by the plaintiffs, the state of Texas et al., by joining said appellants in the filing of assignments of error and the execution of appeal bonds, can be of no avail to them. Therefore said judgment will be affirmed against interveners, T. J. Crowe and others.

We are now brought to consider this suit as originally instituted and proceedings had thereon between the parties thereto. For the sake of convenience from now on, the parties remaining before the court will be referred to as follows: The plaintiffs as appellants, and the defendants as appellees, except where either party may be referred to individually. Was the suit properly brought by the district attorney of Dallas county, and in the name of the proper plaintiffs?

Appellees contend that it was not within the authority of the district attorney of Dallas county to institute the suit, and that, even if such authority existed, the suit was not instituted for and in the name of the proper plaintiff.

Article 339, Rev. Civ. Stat. 1925, provides: "When it shall come to the knowledge of any district or county attorney that any officer in his district or county entrusted with the collection or safe-keeping of any public funds is in any manner whatsoever neglecting or abusing the trust confided in him, or in any way failing to discharge his duties under the law, he shall institute such proceedings as are necessary to compel the performance of such duties by such officer and to preserve and protect the public interests."

■ Are the supervisors of a fresh-water supply district officers within the meaning of the language, "any officer in his district or county entrusted with the collection or safe-keeping of any public funds," as used in said article 339?

Section 59a, art. 16, of our state Constitution, in part, reads as follows: "The conser-

vation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of * * * waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semiarid and other lands needing irrigation, * * * are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto."

The Legislature, acting in conformity with said constitutional provision, enacted chapter 4 of title 128, known as the Fresh-Water Supply District Statute, and embraced in articles 7881 to 7959, inclusive, of the Rev. Civ. Stat. 1925. By said article 7881, "said district shall have and may exercise all the rights, privileges and powers given by this chapter [meaning said chapter 4] and in accordance with its directions, limitations and provisions." Article 7915, Id., fixes the statutes of all fresh-water supply districts, as follows: "All districts shall be governmental agencies and bodies politic and corporate; and such districts are hereby declared to be defined districts within the meaning of Section 59, Article 16 of the State Constitution, and may, through their supervisors, sue and be sued in any and all courts of this State in the name of such districts, and all courts of this State shall take judicial notice of the establishment of such districts, and said districts shall contract and be contracted with in the name of such districts"—and in part it is declared by article 7917, Id., that "all such districts shall have such powers of government, and with authority to exercise such rights, privileges and functions concerning the purposes for which they are created, as may be conferred by this chapter [meaning chapter 4, title 128], or any other law in this State, to the benefit of which they may become entitled."

Article 7890, Id., creates the office of supervisor, and makes provision for the selection of five persons as supervisors by the qualified votes of a fresh-water supply district at the election held to determine whether or not such district shall be organized; and article 7897, Id., provides that "a general election for the election of five supervisors and one assessor and collector for such district shall be held therein biennially on the first Tuesday in January"; and article 7901, Id., fixes the term of office for supervisors for a period of two years; and, by article 7906, supra, all vouchers issued for the payment of any funds of the district are required to be signed by at least three supervisors; and article 7907, supra, confers upon supervisors of a district the authority to select a depository for such district, as provided by law, for the selection of county depositories, and fixes the duty of such depository to be the same as provided by law for county depositories, and further provides that "the depository shall perform the services of district treasurer, and shall execute a bond as such as may be required by the supervisors." Powers of board of supervisors are conferred by article 7909, Id., as follows: "The supervisors shall have control over and management of all the affairs of such district, shall make all contracts pertaining thereto, and shall have control of the construction of all improvements and works within and without the boundaries of such district, and the transportation and distribution of the water of such district."

Article 7896, supra, provides for the execution of bonds and the taking of the oath of office by supervisors, as follows: "Within ten days or as soon after the making and entry of said order as practicable, each supervisor shall give a good bond for five thousand dollars [$5,000], payable to the district and conditioned upon the faithful performance of his duties, to be approved by the commissioners court. Each supervisor shall take the oath of office prescribed by the Statute for commissioners court, except that the name of the district shall be substituted for the county."

Articles 7931 to 7939, inclusive, supra, provide for the issuance and sale of bonds by a fresh-water supply district to accomplish the purposes for which it was created, as provided for in article 7918, Id., namely: "All districts shall have full power and authority to build, construct, complete, carry out, maintain, and in case of necessity add to and rebuild, all works and improvements within and without such districts necessary to accomplish any plan of conservation, transportation and distribution of fresh water adopted for or on behalf of such districts, and may make all necessary and proper contracts, and employ all persons and means necessary to that end; and such districts are authorized, if the governing bodies thereof shall deem it necessary, to take over in whole or in part by purchase or otherwise, any water plants or systems within such districts."

In reference to the sale of bonds issued by a district, article 7939, supra, provides that, "after such bonds have been so registered, the supervisors shall sell same on the best terms and for the best price possible," for "not less than their face value and accrued interest; and shall promptly pay over to the district depository the proceeds of such sale to be placed to the credit of such district."

From the above provisions of our statutory law, the conclusion is irresistible that the five supervisors of Dallas county fresh-water supply district No. 7 were officers in Dallas county, Tex., intrusted with the collection and safe-keeping of public funds. Therefore the district attorney of Dallas county was authorized to institute the proceedings before us against all parties therein named, especially the five supervisors of said district, not only to compel the performance of the duties resting upon them as such supervisors, but to preserve and protect

the public interest; said district representing within the sphere of its operation a part of the public interest as much as any one of the counties of the state represents a part of the public interest of said state. Was the suit brought in the name of the proper plaintiffs, namely, the state of Texas, by and through the district attorney of Dallas county, Tex., and L. S. Harper, a taxpayer of Dallas county fresh-water supply district No. 7? Article 339, supra, simply confers authority upon a district or county attorney to institute and maintain a suit as an attorney and not in any respect as a party to the litigation, and to institute such proceedings as may be necessary to compel the performance by an officer of the duties enjoined by virtue of the office held, and to preserve and protect the public interest against injurious results flowing from the failure of such officer to perform the duties enjoined upon him by his official position; such duties, of course, having to do with the collection or safe-keeping of any public fund. The fact that the name of the "plaintiffs" was not designated in said article 339 is sufficient to justify the conclusion that it was intended that the character of suit provided for by said article should be instituted in the name of the state where a state official was involved and in the name of any political or governmental subdivision of the state where an officer of such political or governmental subdivision was involved and authorized to institute and defend legal proceedings. The suit instituted was only to preserve and protect the public interest as represented by the governmental powers and duties conferred by the Legislature upon that portion of the state's citizenship domiciled within the boundaries of said fresh-water supply district. On its organization said district became a governmental agency, body politic and corporate, and a defined district or a political subdivision of the state within the meaning of section 59a, art. 16, of the state Constitution, and through its supervisors had the right to contract and be contracted with, to sue and to be sued, in any and all courts of the state in its corporate name; all courts being required to take judicial notice of its establishment. But for the fact that the supervisors involved in this suit are necessarily parties defendant thereto, same would have been properly maintained in the corporate name of said fresh-water supply district represented by an attorney selected by said supervisors.

■ As to the presence of L. S. Harper as a party plaintiff, we are of the opinion that he is a proper, though not a necessary, party; this, because of the inability of the supervisors to act for said district, conferred upon any one of the taxpaying citizens of said district the right, in the event the district attorney should have refused to institute the proceedings, to have brought same in his name as plaintiff, and all other taxpayers similarly situated, for the use and benefit of said district. As to the state of Texas, we are of the opinion that the state was improperly joined as a party plaintiff, this because the institution of the suit in the name of the state was not authorized by nor made necessary on account of any omission in the law. The fact that the suit was not instituted directly in the name of Dallas county fresh-water supply district No. 7, by the district attorney of Dallas county, can furnish no ground for the abatement of the suit, this because the district was in fact before the court as the beneficial party represented by the district attorney of Dallas county, an officer selected, authorized, and required by law, under the facts alleged, to represent said district, in the character of litigation reflected by appellant's petition, namely, to compel the performance by the supervisors of said district of the duties required of them by law as such officers, and to preserve and protect the public interest represented by said district against any neglect or abuse of the trust confided in said supervisors by virtue of their respective official position. The suit was not instituted for the use and benefit of either the state or L. S. Harper, but for said district No. 7, and the reason why said suit was not instituted through the supervisors of said district was because they were necessary parties defendant in order to preserve and protect the public interest represented by said district. As instituted, a judgment rendered in the suit for or against the district would be res adjudicata, as every right that could be litigated in a suit, brought directly in the name of said district, could be determined in the suit as brought. Therefore the appearance of a taxpaying citizen of said district as plaintiff in the suit, one whose interest was necessarily involved on account of the illegal use and unlawful appropriation of funds belonging to said district, as alleged in appellant's petition, could not be a ground for the abatement of said suit. As the state must necessarily pass out of the case as a party plaintiff, we are of the opinion that, in amending, in order to keep the records straight, the suit should proceed in the name of Dallas county fresh-water supply district No. 7.

■ It is earnestly contended by appellees that the judgment of date June 7, 1927, on its face shows that same was pronounced on a full hearing of the facts, and that, as no statement of facts was filed, the court must assume that the facts established on the trial were sufficient to support and authorize the judgment. This position would be correct if the terms of the judgment supported the statement that it discloses on its face that the trial upon which same was rendered was based upon an introduction of testimony on the issues of fact presented by the pleadings. It is true it is stated in the judgment that, "on the 7th day of June, 1927, came on to be

heard * * * the above entitled cause at a regular setting upon its merit, and that a jury was waived and all matters of law and of fact were submitted to the court." Thus far it would indicate a trial upon the merits, in that the cause had been regularly set for trial upon its merits, that all parties appeared and announced ready to proceed to trial on such setting, and a jury was waived and all matters of law and fact were submitted to the court. The impression created by such recitals we think absolutely destroyed by the following affirmative language of the judgment, which clearly declares in no uncertain terms on what the trial judge did in fact act in pronouncing said judgment.

First, the court proceeded to sustain the general demurrer of appellee Stickle Lumber Corporation to appellants' petition: the language in reference thereto being as follows: "It is ordered, adjudged and decreed by the court that, the general demurrer of the defendant, Stickle Lumber Corporation, to plaintiffs' petition, be, and it is hereby, sustained, and judgment is entered accordingly in favor of the defendants, Stickle Lumber Corporation, A. W. Stickle, Mrs. R. M. Stickle, Maple Lawn Highlands Company, W. A. Catlett, R. H. Snow, Frankie E. Catlett, W. P. .Bozarth, Wesley Bennett, and American Surety Company of New York."

What alone can be gathered from this language, giving it its everyday commonly accepted import? The word "accordingly," as used in said judgment entry, means "agreeably, suitably, or a manner conformable," and is so defined in Webster's New International Dictionary, 1927 Edition, and in the Century Dictionary & Cyclopedia. Giving each one of said definitions effect, we find that said judgment would read, if the word "agreeably" should have been used, "and judgment is entered agreeably in favor of." Agreeably to what? Agreeably to the fact that the court had sustained the general demurrer of the Stickle Lumber Corporation, not because of a hearing upon the merits, for that idea is excluded by the very context of the language used. The use of the word "suitably" would likewise have presented equally as strong a sentence against the contention of appellees; namely, "and judgment is entered suitably." Suitably to what? To the ruling made by the court on said general demurrer; and, certainly, using the words, "in a manner conformable," would exclude the possibility of reasonable minds differing as to the effect that should be given to the judgment as a whole, namely, that it was a judgment pronounced in favor of all the defendants solely upon and in keeping with and by virtue of the court's action on the general demurrer of the defendant Stickle Lumber Corporation, and that the recitation preceding the announcement of the court upon said demurrer meant nothing more than that the cause had been regularly set for trial upon

its merits, that the parties appeared at that time and announced ready for trial and waived a trial by jury, all necessary proceedings to be had in order to approach the hearing of the cause on the merits, either before the court or jury, but would not indicate that such a trial did in fact take place as against the entry of the judgment sustaining the general demurrer. It is true the general demurrers of the other defendants were not presented by the parties, and from this it is to be assumed that the other defendants were content with the action of the court on the general demurrer of appellee Stickle Lumber Corporation, and therefore did not present to the court their respective demurrers.

█ The acts of the five supervisors in the purchase of the property comprising the waterworks plant of said district, and the payment of the respective sums for same out of the money acquired by said bond issue, as alleged in appellants' petition, were acts in connection with and part of the duties enjoined upon said supervisors by law, the faithful performance of which was secured by the terms of the bonds executed by said supervisors. The violation of such duties in the making of contracts and the payment of the respective sums of money for such properties, as alleged by appellants, was sufficient to show a cause of action on the bonds of said supervisors, and also against the other appellees, to recover any sum or sums of money wrongfully received by them, respectively, in violation of the rights of said district. Quaw v. Paff, County Treasurer, 98 Wis. 586, 74 N. W. 369; Land, Log & Lumber Co. et al. v. McIntyre et al., 100 Wis. 245, 258, 75 N. W. 964, 69 Am. St. Rep. 915, 925; Chippewa Bridge Co. v. City of Durand et al., 122 Wis. 85, 99 N. W. 603, 106 Am. St. Rep. 931; Avery et al. v. Job et al., 25 Or. 512, 36 P. 293; Webster v. Douglas Co., 102 Wis. 181, 77 N. W. 885, 78 N. W. 451, 72 Am. St. Rep. 870.

█ It is urged by appellee American Surety Company of New. York that the bonds of the supervisors, signed by it as surety, are fatally defective, in that, each bond is in effect conditioned "that whereas the principal has been appointed to the office of supervisor in and for Dallas County in the State of Texas, and if the principal shall faithfully perform and discharge all of the duties required of him as supervisor in and for Dallas County, State of Texas, then this obligation is void," and therefore, as the suit was brought, it cannot be shown that the condition of said bonds has been violated so as to entitle appellant district to recover thereon. What can be only gathered from the entire language of the bonds as to the situation of the parties in the execution of same and the purpose for which the bonds were executed? Dallas county fresh-water supply district No. 7 was a governmental agency body politic and corporate, created and existing only,

"for the purpose of conserving, transporting and distributing fresh water from lakes, pools, reservoirs, wells, springs, creeks and rivers for domestic and commercial purposes," and had nothing to do with the administration of the county affairs of Dallas county. Dallas county had no county supervisors, while under the law said water district was required to have a board of supervisors composed of five members; said board being an agency of the government created for public purposes, namely, the management of the affairs of said water district in the manner and form as directed and required by law. The execution of the bonds by those selected as supervisors was one of the requirements of the law. The American Surety Company of New York was a private corporation engaged in the execution of bonds as surety for others in consideration of the payment of the price fixed by it for such service. Dallas county did not procure or have anything to do with the execution of said bonds, and had no interest involved that was to be or could be in any respect protected by the execution thereof. It is clearly disclosed from the language of the bonds that appellee American Surety Company of New York, in the execution of the bonds, became surety thereon to secure appellant Dallas county fresh-water supply district No. 7 in the faithful performance of the duties of its supervisors enjoined by law upon the principal in said bonds, respectively; in other words, that the suretyship was for the benefit of said appellant district, and that said bonds were executed for no other purpose.

We therefore hold that the said bonds are not fatally defective, as contended by appellee American Surety Company of New York. Under the law, neither a cause of action for damages, purely as such, nor the right to cancel the contracts under and by virtue of which the waterworks system was purchased by the supervisors of appellant water district, existed or could be maintained, as the right of recovery under the case as made by appellants' petition is limited to a recovery on the bonds declared upon and against those who participated in the illegal expenditure and receipt of the funds of said district, as alleged by appellants; such illegal contracts, expenditures, and receipts of money being the acts alleged by appellants as constituting a breach of the bonds sued upon. We therefore refrain from discussing the merits of said petition in so far as same attempted to set up an action sounding in damages or the equitable right to rescind the contracts made for the purchase of the waterworks plant. By reason of the fact that the court erred in sustaining the general demurrer of appellee Stickle Lumber Company, and entered judgment thereon in favor of all the appellees, this cause is reversed and remanded as to the original parties to this suit, but affirmed as to interveners, T. J. Crowe and others.

Affirmed in part; reversed and remanded in part.